**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ATM MAGFOOR RAHMAN SARKAR; HASNA HENA RAHMAN; SAIQA RAHMAN; SAHRIAR RAHMAN, *Petitioners*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent.* | No.17-72212 <br><br> Agency Nos. A070-952-103 A070-952-104 A070-952-105 A070-952-107 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 10, 2022
Pasadena, California

Filed July 1, 2022

Before:  Sandra S. Ikuta, Kenneth K. Lee, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest

## SUMMARY[*]

### Immigration

The panel denied the parties' motion for judicial administrative closure of the case and denied Atm Magfoor Rahman Sarkar, his wife, and their children's petition for review of the Board of Immigration Appeals' denial of their third motion to reopen.

Although this case had been pending for nearly five years, shortly before oral argument both Sarkar and the Government moved to administratively close the case because the Government had deemed Sarkar a low enforcement priority. The panel denied the parties' motion, concluding that the panel's inherent authority to manage its docket, including by granting administrative closures, would not be served by keeping this case on the panel's docket indefinitely. The panel wrote that the Government has numerous means to avoid enforcement against Sarkar if that is what it wants, and it declined to add judicial administrative closure to the list of the Government's tools.

Sarkar did not dispute that his third motion to reopen was untimely and numerically barred. Instead, Sarkar argued that new evidence showing the growing influence of Jihadist extremists in Bangladesh increased his risk of being targeted on account of his political beliefs and membership in the Jatiya party. The panel concluded that the BIA did not abuse its discretion in concluding that Sarkar's new evidence was not material to Sarkar and was insufficient to demonstrate a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prima facie claim for asylum, withholding of removal, and Convention Against Torture relief.

The panel explained that none of the evidence that Sarkar produced related to membership in the Jatiya party or members of that party who speak up against Islamic extremism. Although Sarkar contended that the changes in marriage laws, the removal of certain poems and stories from educational textbooks, and a terrorist attack that killed mostly foreigners showed a change in Bangladesh's acceptance of radical Islam, he failed to show that those conditions more severely impacted him and his family than the population at large.

The panel agreed with the BIA that Sarkar's new evidence did not demonstrate an individualized risk of persecution or that he would be subject to a pattern or practice of persecution based on his political affiliation. The panel explained that Sarkar had not submitted evidence of direct and specific facts establishing that he had a reasonable fear of persecution, and his affidavit and articles were too speculative to be credited as a basis for his fear of future persecution. The panel concluded that Sarkar's evidence also failed to establish a nexus between a reasonable fear of future persecution and his proposed protected grounds. Rather, the evidence pointed to generalized crime and societal shifts that did not target Sarkar or those in his proposed social groups.

The panel agreed with the BIA that Sarkar's evidence also did not establish that he is now more likely than not to face torture if returned to Bangladesh.

**COUNSEL**

Ruben N. Sarkisian (argued), Glendale, California, for Petitioners.

Raya Jarawan (argued) and Colette J. Winston, Trial Attorneys; Jeffery R. Leist, Senior Litigation Counsel; Anthony C. Payne, Assistant Director; Brian M. Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

FORREST, Circuit Judge:

Atm Magfoor Rahman Sarkar, his wife, and their two children petition for review of the Board of Immigration Appeals's (BIA) order denying their third motion to reopen removal proceedings.[1] Although this case has been pending for nearly five years, shortly before oral argument both Sarkar and the Government moved to administratively close this case because the Government has deemed Sarkar a low enforcement priority. On the merits, it is undisputed that Sarkar's third motion to reopen is untimely and numerically barred. Nonetheless, he argues that he is entitled to relief because he has presented new and material country-conditions evidence that establishes his prima facie eligibility for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we deny the parties'

---

[1] Rahman Sarkar is the lead Petitioner; his wife and children seek derivative relief. We refer only to the lead Petitioner for simplicity.

motions for administrative closure as well as Sarkar's petition for review.

## I.  BACKGROUND

Sarkar, a native and citizen of Bangladesh, entered the United States as a nonimmigrant visitor in 1991. After he overstayed his visitor authorization, the Government issued a Notice to Appear charging him as deportable under 8 U.S.C. § 1231(a)(1)(B). Sarkar admitted the allegations against him and conceded removability and applied for political asylum based on his participation in the Jatiya Party.

After failing to appear and being ordered removed *in absentia* in 1997, the immigration court granted a motion to reopen and held a hearing on Sarkar's claims. In 1998, an Immigration Judge (IJ) denied his application for asylum and ordered him removed to Bangladesh. The IJ found Sarkar's political persecution claims "unbelievable" and "at the minimum exaggerated if not fabricated." The IJ also noted that the evidence contradicted Sarkar's claims. The BIA affirmed the IJ's decision without opinion. Sarkar did not appeal.

About six months later, Sarkar moved to reopen with the BIA citing changed country conditions. The BIA denied the motion because it was untimely and failed to show any material change in the conditions in Bangladesh. We denied Sarkar's petition for review concluding that the BIA did not abuse its discretion. *See Sarkar v. Gonzales*, 114 F. App'x 959 (9th Cir. 2004) (unpublished). Several years later, Sarkar filed a second motion to reopen alleging ineffective assistance of counsel. The BIA denied this second motion to reopen, and we again denied Sarkar's petition for review. *See Sarkar v. Holder*, 444 F. App'x 207 (9th Cir. 2011)

(unpublished). We held that the BIA did not abuse its discretion because Sarkar presented insufficient evidence to show that he was prejudiced by his former counsel's actions. *Id.* at 208.

In 2017, Sarkar filed a third motion to reopen, which is the subject of this petition. In this motion, he argued that changed circumstances in Bangladesh "put him directly at risk of serious injury or death due to his opposition to Islamic Extremists, as well as the Bangladeshi political parties catering to the religious extremists." Sarkar attached four exhibits to his motion. The first exhibit is his own declaration, in which he stated that "recent developments in my country of Bangladesh have escalated the terrible conditions to a new level, creating changed conditions which place me in fear of returning to my country."

Sarkar described his upbringing and the shift in Bangladeshi politics, which "propelled" him to join the Jatiya Party and go into hiding for several years. He contended that "[w]hile Islamic extremists have always existed in Bangladesh, . . . [he] ha[s] begun to witness from afar, slow but steady capitulations by the government to extremists." He pointed to "seemingly small," but dangerous, government actions, such as "weakening our landmark legislation against underage marriage." While in the United States, Sarkar declares that he has "become known in the Bangladeshi expatriate community as a fierce opponent of religious extremism," evidenced by his "heated arguments" at his local mosque. Thus, he concludes that he remains safe only because he resides in the United States, and he fears not having police protection if returned to Bangladesh.

The second exhibit is an online article titled "Bangladesh Weakens Longstanding Law Against Underage Marriage."

This article highlights the government's change to a "landmark law against underage marriage," allowing "girls under the age of 18 to marry in some circumstances." According to this article, the change was supported by powerful Islamist organizations.

The third exhibit is also an online article acknowledging "the removal of 17 poems and stories" in educational textbooks. This removal—"barely noticeable to the general public"—reportedly stemmed from demands made by a group of Islamic religious scholars. The article contends that the removal "goes far beyond textbooks" and reflects a larger change in the government's acquiescence to extreme Islamic groups.

The final exhibit, titled "The Rise of Islamic Extremism in Bangladesh," points to violent attacks on those who "rais[e] their voices against extremist ideology." It highlights an "attack on innocent civilians in an upscale bakery" killing 22 people, "mainly foreigners." This attack allegedly stemmed from a shift in Bangladesh politics. Although there are indications that newer attacks were carried out by ISIS, the government "refuses to accept that ISIS has infiltrated the country, instead blaming local groups."

The BIA denied Sarkar's third motion to reopen as "both untimely and number-barred." The BIA held that the evidence submitted did not establish an exception to the time and numerical limitations for motions to reopen. It also noted that the "limited background evidence of Islamist militant violence in Bangladesh, which has been directed at various groups of individuals, including foreigners, does not prima facie demonstrate that [Sarkar's family] face[s] an individualized risk of persecution or that they would be subject to a pattern or practice of persecution." Rather, the

BIA concluded that Sarkar and his family face the same risks as the general population. As to the CAT claim, the BIA found that Sarkar's changed-circumstances evidence did not demonstrate that it was more likely than not that he would face torture with the consent or acquiescence of the Bangladesh government.

Sarkar timely appealed and filed a motion for a stay of removal. Soon after, he filed a supplemental motion to stay removal, which the Government opposed. We granted Sarkar's supplemental motion for a stay pending this appeal. The case was still pending almost four years later, and we directed the parties "to file a request for appropriate relief or notify the court that they wish to proceed to decision." The parties agreed to proceed, and the Government noted that this "case does not merit alternative resolution." But shortly before oral argument, both the Government and Sarkar filed unopposed motions to administratively close this case. The Government gave as its reasons for indefinitely postponing a decision on Sarkar's petition that Sarkar and his family "are not an immigration enforcement priority" and "administrative closure would not adversely affect the interests of the parties." The Government further explained at oral argument that it waited so long to pursue this relief because the United States Immigration and Customs Enforcement (ICE) had only recently made it aware that Sarkar is not an enforcement priority. Sarkar relied on the Government's reasons in his motion for administrative closure.

## II.  DISCUSSION

### A.  Administrative Closure

Federal courts have inherent power "to control the disposition of the causes on [their] docket[s] with economy

of time and effort for [themselves], for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts have exercised this authority in several ways, such as staying proceedings and dismissing a case for failure to prosecute. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). When considering a request to stay an appeal, we have explained that "competing interests" must be weighed. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Those interests include: "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

Courts also have used their inherent power to manage their docket to administratively close cases, which is "the practical equivalent of a stay." *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987); *see also Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010). Administrative closure allows a court to "shelve pending, but dormant, cases" without a final adjudication. *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999). Although an administratively closed case is not counted as active, it "still exists on the docket" and "may be reopened upon request of the parties or on the court's own motion." *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004). In layman's terms, the case is asleep but not dead.

Because the ability to administratively close a case arises from the court's inherent authority, there is no statute or rule defining when administrative closure is appropriate; it is a matter of discretion. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (recognizing a court's

"discretionary power" to control its docket under *Landis*).
We have used the administrative-closure procedure only in
limited situations. One example is when we are seeking
action in the case from another court, such as when we
(1) order a limited remand to the district court, *see Cox v.
Allin Corp. Plan*, 848 F. App'x 343, 344 (9th Cir. 2021)
(unpublished); (2) transfer a petition for review to a district
court to determine a disputed citizenship claim, *see
Anderson v. Holder*, 673 F.3d 1089, 1093 (9th Cir. 2012); or
(3) certify a question to a state court, *see Himes v. Somatics,
LLC*, 29 F.4th 1125, 1127–28 (9th Cir. 2022). Our sister
circuits have likewise granted administrative closure when
awaiting action from another forum related to the subject
case. *See, e.g.*, *WRS, Inc. v. Plaza Entm't, Inc*, 402 F.3d 424,
426 (3d Cir. 2005) (administrative closure due to initiation
of bankruptcy proceedings); *Quinn*, 828 F.2d at 1465
(administrative closure due to pending arbitration). We have
also administratively closed a case when we are awaiting a
decision in a different case pending in our court or another
court that will resolve a key issue in the subject case. *See,
e.g.*, *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 18-
55407, 2019 WL 5390028, at *1 (9th Cir. Oct. 21, 2019)
(unpublished) (awaiting a decision from the Supreme
Court).

In these situations, halting the proceedings serves the
efficient resolution of the subject case because we are
delaying our decisionmaking to allow action by a different
panel or a different forum that will impact the nature of the
case pending before us or the basis for our decision.
Harkening back to the competing interests at issue in
requests for stay, halting the proceedings in these
circumstances is efficient because action in the external
proceedings may simplify the "issues, proof, and questions

of law" to be decided in the subject case. *CMAX, Inc.*, 300 F.2d at 268.

Nothing like those circumstances is present here. The only reason the parties seek to shelve this case is because the Government has determined that Sarkar is "not an immigration enforcement priority." The Government suggests that this case can linger without a decision until such time as the Department of Homeland Security decides "to proceed with removal." There is no obstacle to our proceeding forward and resolving Sarkar's case, as the Government conceded at oral argument, nor is it clear that any efficiency is to be gained by delay.

We reject the parties' requests. They have not cited to, and we are unaware of, any authority allowing us to administratively close a case because the parties do not wish to have the court decide their case now but may want it to be decided at some later time. As described, the examples of where we have granted administrative closure involve external factors that impact the decision that we must make. It makes sense as a matter of efficiency for a court to delay its decision when awaiting some action outside its or the parties' control that will impact the decision to be made.

But that is not what is happening here. The parties are asking us not to decide Sarkar's petition for review, which has been pending for nearly five years, as a matter of their preference. None of the "competing interests" relevant to staying an appeal counsel in favor of granting their request. *Id.* If this case were administratively stayed the court would lose the effort that it expended in preparing this case for hearing and it would needlessly retain on its docket a case that could be resolved. The parties assert that their interests are not prejudiced by an indefinite stay, but they fail to demonstrate the opposite—that they will be prejudiced by

the court simply deciding this case. And there is no indication that the "orderly course of justice" will be served by an indefinite stay; that is, that the case will be easier to decide at some later date. *Id.*

That the typical interests that we must consider in deciding whether to stay an appeal do not counsel in favor of granting the relief the parties seek is enough reason to deny the parties' motions. This relief is a matter of our discretion, but as the Supreme Court has instructed, "[d]iscretion is not whim." *Golan v. Saada*, No. 20-1034, __ S. Ct. __, 2022 WL 2135489, at *7 (June 15, 2022) (alteration in original) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005)). But our decision is further supported by the various means that the executive branch has at its disposal to forgo a judicial decision if it deems a case unworthy of enforcement, none of which interfere with normal judicial process. On a broad level, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). That is especially true in the immigration context, where the Supreme Court has recognized that "the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders'" are exercises in prosecutorial discretion "which represent the initiation or prosecution of various stages in the deportation process." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (alterations in original) (quoting 8 U.S.C. § 1252(g)); *see Vasquez v. Garland*, No. 18-70824, 2021 WL 3485910, at *3 (9th Cir. Aug. 9, 2021) (unpublished) (Bea, J., concurring). "At each stage the Executive has discretion to abandon the endeavor . . . for humanitarian reasons or simply for its own convenience." *Reno*, 525 U.S. at 483–84. In essence, the government is

always in control of an alien's removal. *See Arizona v. United States*, 567 U.S. 387, 396 (2012) ("Federal [immigration] officials . . . must decide whether it makes sense to pursue removal at all."); *see also* Memorandum from John D. Trasviña, ICE Principal Legal Advisor, *Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities* (May 27, 2021) (Trasviña Memo).

We list some of the Government's specific procedural tools. It may move to remand the matter to the BIA. *Li v. Keisler*, 505 F.3d 913, 918 (9th Cir. 2007) ("[T]he government [retains] the flexibility to voluntarily remand in order to correct prior actions that have been subsequently called into question by emerging case law, claims of changed circumstances, or other novel considerations."); *see also Qianchang Wu v. Lynch*, 623 F. App'x 433 (9th Cir. 2015) (unpublished) (granting the government's remand motion to the BIA for administrative closure). It may also move to reopen proceedings with the BIA under 8 C.F.R. § 1003.2(a). *See He v. Gonzales*, 501 F.3d 1128, 1130 (9th Cir. 2007) (noting that a party filed a motion to reopen with the BIA "[w]hile their initial petition for review was pending on appeal to our court").

If the Government's efforts to remand or reopen proceedings before the agency is successful, it has further options for exercising its prosecutorial discretion in that forum. *See* Trasviña Memo 4–10. The Government can move to dismiss the proceedings altogether. *See* 8 C.F.R. § 1239.2(c). It can seek to narrow the issues in dispute through stipulation. *See* Trasviña Memo 4. It can also request a continuance, *see* 8 C.F.R. § 1003.29, or that the BIA administratively close a case, which is expressly allowed in specified circumstances, *see, e.g.*, 8 C.F.R.

§§ 1214.2, 1214.3; *see also* Trasviña Memo 7–8. And if the Government ultimately takes steps to undermine or displace a final order of removal, we lack jurisdiction to review its choice and must dismiss any petition for review pending on our docket. *See, e.g.*, *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) (order); *see also Viloria v. Lynch*, 808 F.3d 764, 767–68, 770 (9th Cir. 2015).

The burden is on the Government to use one of the many tools it has for not enforcing immigration law in a particular case if that is its policy preference. Shelving a case indefinitely on our docket to avoid having a final decision rendered in a case properly presented to us is not one of those tools. Indeed, this case demonstrates the absurdity of what the parties are asking. Sarkar filed his petition in August 2017. A stay of removal was entered a few months later, and the case has been fully briefed since August 2018. Given our significant backlog of immigration cases, this case was not moved toward resolution until over three years later in October 2021 when we asked the parties whether they still wanted to proceed to decision or whether they anticipated an alternative resolution. Both parties responded that they wanted to proceed. The court then scheduled the case for oral argument and we began our preparations only to have the parties request a few weeks later that the case be administratively stayed because it is not an enforcement priority. This is not a good use of judicial resources. The executive branch should sort out its enforcement priorities, about which we express no opinion, without burdening the already-strapped judiciary.

Finally, we note that regardless of our decision in this case, the Government has *still more* options for not pursuing enforcement against Sarkar if that is what it wishes. It may decide not to execute a final order of removal. *See* Trasviña

Memo 4. It also may grant Sarkar new relief, for example if Sarkar files a new motion to reopen based on approval of his pending I-130 visa petition. *See* 8 C.F.R. § 1003.2(c)(1); *Kalilu v. Mukasey*, 548 F.3d 1215, 1217–18 (9th Cir. 2008) (per curiam) (describing a petitioner's ability to file a motion to reopen with an approved I-130 visa petition). Nothing about our denial of the parties' motion for administrative closure prevents the Government from exercising its enforcement prerogative in this case.

In sum, our inherent authority to manage our docket, including by granting administrative closures, is not served by keeping this case on our docket indefinitely. The Government has numerous means to avoid enforcement against Sarkar if that is what it wants. We decline to add judicial administrative closure to the list of the Government's tools. The motions to administratively close this case are denied.

## B. Motion to Reopen

Turning to the merits, we "review the BIA's denial of a motion to reopen for an abuse of discretion." *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 800 (9th Cir. 2022). The BIA's decision "should be left undisturbed unless it is 'arbitrary, irrational, or contrary to law.'" *Yan Rong Zhao v. Holder*, 728 F.3d 1144, 1147 (9th Cir. 2013) (quoting *He*, 501 F.3d at 1131).

"An alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." *Mata v. Lynch*, 576 U.S. 143, 144 (2015); *see* 8 U.S.C. § 1229a(c)(7)(A). "Motions to reopen are disfavored due to the 'strong public interest in bringing litigation to a close.'" *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1150–51 (9th Cir. 2010) (per curiam) (quoting *INS v. Abudu*, 485 U.S. 94, 107

(1988)). "They are particularly disfavored in immigration proceedings, where 'every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" *Id.* (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). Generally, an alien may file only one motion to reopen, and it must be filed within 90 days from the entry of a final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, "[t]here is no time limit on the filing of a motion to reopen" when the motion "is based on changed country conditions arising in the country of nationality or in the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see Hernandez-Ortiz*, 32 F.4th at 804.

"To prevail on such a motion, a petitioner must thus clear four hurdles." *Hernandez-Ortiz*, 32 F.4th at 804 (internal quotations and citation omitted). Those hurdles are:

> (1) produce evidence that conditions have changed in the country of removal; (2) demonstrate that the evidence is material; (3) show that the evidence was not available and would not have been discovered or presented at the previous hearings; and (4) demonstrate . . . prima facie eligibility for the relief sought.

*Id.* (internal quotations and citation omitted). The BIA may "deny the motion to reopen for failing to meet any of these burdens." *Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008).

Sarkar does not dispute that his third motion to reopen is untimely and numerically barred. Instead, he argues that his

newly submitted country conditions evidence is material and establishes prima facie eligibility for his requested asylum, withholding of removal, and CAT relief. In his view, the new evidence "establish[es] the growing influence of Jihadist extremists on law and society, attacks on secularists, acceptance of underage marriage, rewriting of textbooks, and a stark rise in Islamic extremism, intimidation, and violence." And Sarkar argues that considering "his past political activism in the Jatiyya party, . . . [he] has established an individualized risk of targeting on account of his political beliefs, and, minimally, a well-founded fear of future persecution" and, therefore, that the BIA abused its discretion in denying his motion to reopen.

Sarkar's arguments are unpersuasive. The BIA did not abuse its discretion in concluding that his new evidence was (1) not material to Sarkar and (2) insufficient to demonstrate a prima facie claim for relief. First, as the Government contends, none of the evidence that Sarkar produces relates to membership in the Jatiya party or members of that party who speaks up against Islamic extremism. Although Sarkar contends that the changes in marriage laws, the removal of certain poems and stories from educational textbooks, and a terrorist attack that killed mostly foreigners show a change in Bangladesh's acceptance of radical Islam, he failed to show that those conditions more severely impact him and his family than the population at large. *See Najmabadi v. Holder*, 597 F.3d 983, 989–90 (9th Cir. 2010) (noting that the petitioner's evidence lacked materiality because "it simply recounts generalized conditions" in the country of removal). Thus, Sarkar has fallen short of his burden to show "individualized relevancy" and "that [his] predicament is appreciably different from the dangers faced by [his] fellow citizens." *Id.* (citation omitted). This reason alone shows the BIA did not abuse its discretion. *Toufighi*, 538 F.3d at 996.

The BIA also permissibly denied Sarkar's motion to reopen because he has not established a prima facie claim for any relief. Prima facie eligibility for relief "is established when 'the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Tadevosyan v. Holder*, 743 F.3d 1250, 1255 (9th Cir. 2014) (quoting *Garcia v. Holder*, 621 F.3d 906, 912 (9th Cir. 2010)); *see also Hernandez-Ortiz*, 32 F.4th at 804–05. Said another way, Sarkar "must adduce evidence that, along with the facts already in the record, will support the desired finding if evidence to the contrary is disregarded." *Silva v. Garland*, 993 F.3d 705, 718 (9th Cir. 2021) (internal quotation marks and citation omitted).

We first must determine whether Sarkar established a prima facie case for asylum or withholding of removal. Absent past persecution, such as is the case here, he must demonstrate "a well-founded fear of future persecution" in Bangladesh on account of a protected ground to qualify for asylum. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(b). To meet this burden, he must prove both a subjective and objective risk of future persecution. *See Silva*, 993 F.3d at 719. "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Id.* (quoting *Limsico v. INS*, 951 F.2d 210, 212 (9th Cir. 1991)).

For withholding of removal, Sarkar must present evidence that it is "more likely than not that he . . . would be persecuted on account of" a protected ground. 8 C.F.R. § 1208.16(b)(2). "The 'more likely than not' standard for withholding of removal is 'more stringent' than the 'reasonable possibility' standard for asylum, and therefore an applicant who is unable to show a 'reasonable possibility' of future persecution 'necessarily fails to satisfy the more

stringent standard [for likelihood of future persecution] for withholding of removal.'" *See Silva*, 993 F.3d at 719 (quoting *Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004)).

Sarkar has not submitted evidence of "direct" and "specific" facts establishing he has a reasonable fear of persecution. *Id.* The protected ground that he asserts is his political affiliation with the Jatiya party and opposition to Islamic religious extremism. But as explained above, his affidavit and articles are "too speculative to be credited as a basis for fear of future persecution." *Nagoulko v. INS*, 333 F.3d 1012, 1018 (9th Cir. 2003). The BIA correctly concluded that Sarkar's new evidence did not demonstrate "an individualized risk of persecution" or that he "would be subject to a pattern or practice of persecution" based on his political affiliation. *See Bhasin v. Gonzales*, 423 F.3d 977, 984 (9th Cir. 2005) (noting that an applicant "must generally show an individualized, rather than a generalized, risk of persecution" to establish prima facie eligibility for asylum or withholding of removal).

Sarkar attempts to connect generalized evidence of increased Islamic extremism with his contentions that he has become known "as a fierce opponent of religious extremism" and he has "no doubt" that he is known as an enemy "within the Bangladesh Jihadi/Extremist network." But his evidence fails to establish a nexus between a reasonable fear of future persecution and his proposed protected grounds; it points to generalized crime and societal shifts that do not target him or those in his proposed social groups. *See Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1229 (9th Cir. 2016) (denying an asylum claim based on changed circumstances because the evidence "points to troubling accounts of violence and kidnaping in Mexico," but does not

"specifically show that violent individuals are targeting" persons in petitioners' proposed social group); *Feng Gui Lin v. Holder*, 588 F.3d 981, 986 (9th Cir. 2009) (declining to find changed country circumstances when the petitioner's evidence was insufficiently specific). As a result, we conclude that the BIA did not abuse its discretion in rejecting Sarkar's asylum and withholding of removal claims.[2]

Finally, to qualify for CAT protection, Sarkar must "establish that it is more likely than not that he . . . would be tortured if removed to [Bangladesh]." 8 C.F.R. § 1208.16(c)(2). The BIA concluded that Sarkar's new country conditions evidence failed to meet this standard, which was neither arbitrary nor irrational. The BIA considered the proffered evidence and, for reasons already discussed, correctly determined that it was immaterial to Sarkar's assertion that he is now more likely than not to face torture if returned to Bangladesh. *See Silva*, 993 F.3d at 719 (concluding that the BIA did not abuse its discretion in concluding that speculative evidence did not establish the "more likely than not" standard for CAT protection); *Delgado-Ortiz*, 600 F.3d at 1152 (holding that generalized

---

[2] Sarkar also contends that "the Board erred in failing to remand the proceedings for consideration . . . where [he] had earlier testified he had been tortured by police ion [sic] two occasions." It is true that the BIA declined to "revisit" his "allegations of persecution" that were previously considered and rejected as not credible. But this is not a situation where the BIA made its own adverse credibility finding or improperly applied the prior credibility finding to a new basis for relief. *See Yang v. Lynch*, 822 F.3d 504, 509 (9th Cir. 2016). The BIA therefore did not err by failing to revisit previously rejected arguments. *See Greenwood v. Garland*, __ F.4th __, 2022 WL 2165571, at *3–4 (9th Cir. 2022) (explaining that adverse credibility determinations can impact a later motion to reopen).

evidence of crime in Mexico could not establish prima face eligibility for CAT protection).

**PETITION FOR REVIEW DENIED.**