Marshall, Ch. J.,
after stating the facts of the case, delivered the opinion of the court.
This suit was instituted to recover the rent in arrear, under the deed, executed in August 1779, a part of which rent had accrued during the circulation of paper money. The circuit court decreed that the rents which became payable in the years 1780 and 1781 should be adjusted by the scale of depreciation, when they respectively became due, and that the rents accruing afterwards should be discharged in specie. From this decree, Faw appealed to this court, and it is alleged, that the decree of the court below is erroneous, because, 1st. The contract of August 1777, is within the 2d section of the act of the Virginia assemby, which has been cited. And, if so, *2d. That it is not within the 5th section of that act.
The descriptive words of the act of assembly are, “ all debts and contracts entered into, or made, in the current money of this state, or of the United States,” “ now remaining due and unfulfilled, or which may become ■due, at any future day or days, for the payment of any sum or sums of money.” These words, it is urged, comprehend in express terms the very contract now before the court. That contract is an engagement entered into within the time specified by the act, to pay several sums of current money in future. To make the ease still stronger, contracts for gold and silver coin, tobacco or any other specific property, are expressly excepted out of the operation of the law. When those who introduced these exceptions were so very cautious, as expressly to take a contract for tobacco, or other specific property; out of the Operations of a law made solely for money contracts, there are additional inducements to believe, that every possible contract, not included within the exceptions, was designed to be ■comprehended in the general rule.
It is admitted in argument, by the counsel for the appellee, that the terms used in the first part of the section are such, that if they stood alone, they would include, in their letter, the case at bar: but it is contended, that there are subsequent words which limit those just quoted, so as to restrain their operation to contracts capable of being extinguished. These words are, that upon payment of what was the value of the debt or contract, at the time it was entered into, “ the debtors or contractors shall be for ever discharged of and from the said debts or contracts.” These words, it is *10 said, can only apply to temporary contracts, such as may be completely fulfilled, and from which the debtors or contractors may, in the language of the law, “be for ever discharged.”
It will not be denied, that there is much weight in this argument; but it does not appear to the court, to be strictly correct. In searching for the literal construction of an act, it would seem to be generally true, that posi^ve an<^ provisions, comprehending in terms *a whole class of cases, are not to be restrained, by applying to those cases an implication drawn from subsequent words, unless that implication be very clear, necessary and irresistible. In the present case, the implication does not appear to the court to be of that description. A contract for the payment of distinct sums of money, at different periods, is very much in the nature of distinct contracts. An action of debt lies for each sum, as it becomes due, and when that sum is paid, the debtor or contractor is for ever discharged from the contract to pay it. To understand, in this sense, the words of the act which are considered as restrictive, does not appear to the court to be such a violence to their natural import as to be inadmissible; and to understand them in this sense, reconciles the different parts of the clause with each other.
But although the counsel for the appellee may not have established the literal construction for which they insist, yet so much weight is admitted to be in the argument, that if they succeed in showing the case to be out of the mischief intended to be guarded against, or out of "the spirit of the law, the letter would not be deemed so unequivocal as absolutely to exclude the construction they contend for.
It is urged, that the mischief designed to be guarded against, is confined to temporary contracts, and that by the spirit of the law, and the construction it has received, the time when the consideration, on which the debt is founded, moved from the creditor, is the. real date of contract. But the court perceives no sufficient ground for saying that this case is taken out of the mischief or spirit of the law, by either of the circumstances which have been relied on.
The only real reason for supposing that the law might not be designed to comprehend interminable contracts is, that as paper money must unavoidably cease to circulate, during the continuance of the contract, the parties must have measured their agreement by a more permanent standard. *Very great respect is certainly due to this argument, but it cannot be denied, that an agreement, which is to subsist for a very great length of time, as for a thousand years, would be entered into with precisely the same sentiments as an agreement to subsist for ever. The contracting parties would be as confident, in the one case, as in the other, that the agreement would subsist, after the paper currency would cease to circulate. Yet an agreement for a thousand years would be within the very words and the spirit of the law, which plainly comprehends engagements for different sums of money, to become due in future, at different periods. To suppose a distinction to have been contemplated between two such cases, is to suppose a course of reasoning too unsubstantial, and too finely drawn for the regulation of human action. It seems to be the date, and not the duration of the contract which was regarded by the legislature. The act is applied directly to the date of contract, and the motive for making it was, that contracts en *11 tered into during the circulation of paper money, ought in justice to be discharged, by a sum differing in intrinsic value from the nominal sum mentioned in the contract, and that when the legislature removed the delusive-standard, by which the value of the thing acquired had been measured, they ought to provide that justice should be done to the parties.
That the time when the consideration was received constitutes the date of contract, according to the intention of the act, seems not to be a correct opinion; nor, if correct, would it affect the present case. If for example, a contract had been entered into, in 1779, to be executed in 1789, whereby a specific sum in current money was to be given for property, then to be delivered, no doubt would be entertained, but that the case would come within the law, although the thing sold would pass out of the vendor, after the first of January 1782; yet the contract to pay the money was entered into in 1779, and in the general legislative view of the subject, the value of the money at the date of the contract is supposed to have regulated the price of the article.
*If, in the case of rents, this argument of the counsel for the appellees was correct, it would follow, that rents accruing during the circulation of paper money, or leases made before the first of January 1777, were within the operation of the act. If enjoyment is the consideration for which the rent becomes payable, and the date of the consideration is, in the spirit of the act, the date of contract, then, rents accruing between the first of January 1777, and the first of January 1782, or leases made prior to the former period, would be payable according to the scale of depreciation, and rents accruing after the first of January 1782, or leases made for a short term of years, when depreciation was actually at the rate of 500 for one, would be payable in specie at their nominal sum. These consequences follow inevitably, from the construction contended for, and yet it is believed, that no-person would admit an exposition which he acknowledged to involve them.
The position, then, that the value of the money at the time when the-consideration for which it was to be paid was received, is the standard by which the contract is to be measured, is not a correct one, and if correct, it would not apply to this case, because the real consideration is found in the-contract itself, by which the right to enjoy the premises is conveyed from the grantor to the grantee. This right was defeated by subsequent events,, but does not originate in those events.
The case cited from 1 Wash. 8, by no means conflicts with this opinion. In that case, it was decided, that where a written instrument discloses on its-face any matter which proves that the contract itself was of a date anterior to the paper by which it is evidenced, as when a bond carries interest from a past day, the contract shall be considered as of a date antecedent to its execution, and the scale of that antecedent date shall be applied to it. The reason of this decision is, that the price of the article sold was measured in nominal money, according to its value at the date of the original contract,, and not according to its value when the instrument of writing was executed..
*It is, then, the opinion of the court, that the contract of the 5th of August 1779, comes within the second section of the act “ directing the mode of adjusting and settling the payment of certain debts and contracts, and for other purposes.”
It remains to inquire, whether it is a case proper for the interposition of *12 that equitable power which is conferred on the court by the fifth section of that act, and if so, in what manner, and to what extent, that power ought to be interposed. It is contended by the counsel for the appellant, that this ■case does not come within the fifth section of the act, because, 1st. That section is designed only for the benefit of debtors. 2d. bTo testimony out of a written contract can be admitted to explain it. 3d. If the testimony be admitted, it does not prove one of those extraordinary cases which will be entitled to the benefits of that section.
1st. The fifth section is designed only for the benefit of debtors. That the provisions of an act, for the regulation of contracts, should be designed uniformly to benefit one of the parties only, is at first view a proposition replete with so much injustice, that the person who would maintain it must certainly show, either that the words of the act will admit fairly of no other construction, or that legislative aid on one side only was requisite, in order to do right between the parties. The counsel for the appellants endeavor to maintain both these propositions, and if they succeed in either, the case is clearly wit! them.
In reasoning from the words of the law, they say, that the two cases put are by way of example, and as *they are both cases where the scale established by the act is to be departed from, for the benefit of the debtor, the general power afterwards given to the court ought to be considered as designed to furnish a remedy in other similar cases, not occurring at the time to the legislature. The words of the section are, “ that where a suit shall be brought for the recovery of the debt, and it shall appear, that the value thereof hath been tendered and refused ; or where it shall appear that the non-payment thereof hath been owing to the creditor ; or where ■other circumstances arise, which, in the opinion of the court before whom the cause is brought to issue, would render a determination agreeable to the above table unjust ; in either case, it shall and may be lawful for the court to award such judgment as to them shall appear just and equitable.”
The terms used in the third member of the sentence are certainly very comprehensive, and their general natural import does not appear to be so restrained by their connection with other parts of the section, as necessarily to confine their operation to cases where debtors only can derive advantage from them. The legislature was performing a very extraordinary act. It was interfering in the mass of contracts entered into between the first of January 1777, and the first of January 1782, and ascertaining the value of those contracts by a rule different from that which had been adopted by the parties themselves. Although the rule might, in the general, be a just one, yet that it would often produce excessive injury to one or other of the parties, must have been foreseen. It was, therefore, in some measure necessary to vest in the tribunals applying this rule a power to relax its rigor in such extraordinary cases. This sentiment might produce the fifth section, and if it did, the general terms used ought to be applied to the relief of the injured party, whether he was the creditor or the debtor.
The opinion that the creditor could not, in the contemplation of the legislature, be the injured party, because *the scale of depreciation gave him the full value of his contract, does not seem to be perfectly correct. According to the law of the contract, all moneys accruing under it, which were not received during the currency of paper, would be payable in *13 such other money as might be current at the time of payment. It is impossible to say, by any general rule, what influence the knowledge of this principle might have on the parties, in every case where the contract was continuing, and was to be fulfilled at future very distant periods. Unless the rule applying to such cases possessed some degree of flexibility, it is apparent, that the one or the other of the parties would often be injured, by the interference of the legislature with their contract, and this injury would most generally be sustained by the creditor, in all eases like that at bar, because,, in all such cases, the conviction that a more valuable medium than, that circulating at the time would return during the continuance of the contract,, must have had considerable influence on the parties, in fixing the sum of money agreed to be paid.
There appears, therefore, nothing in the state of the parties to be affected by the fifth section of the act, which should prevent its application, either to creditors or debtors, as the real justice of the case may require.
2d. But admitting the correctness of this opinion, it is contended, that no circumstances can be given in evidence, to explain a written contract, and therefore, it is said, that the judgment of the court in this case must be governed absolutely by the deed of August 1112, unless other subsequent and independent events should control that deed.
The rule which forbids a deed to be contradicted or explained by parol testimony, is a salutary one, and the court is not disposed to impair it. The application of that rule to this case, however, is not perceived. The testimony which brings this contract within the fifth section, neither contradicts-nor explains the deed. It is not pretended, that the deed was not executed on the consideration expressed on the face of it. But according *to the law which existed when the deed was executed, that consideratiowould be payable only in gold and silver coin, when gold and silver coin should become the only currency of the country. The law changing the nominal sum of money by which the debt should be discharged, and giving-a general rule by which a different sum, from that agreed on by the parties, is to be paid and received, authorizes a departure from the rule, where circumstances shall arise which render a determination agreeable to it unjust. The examination of these circumstances is not entered into for the purpose of contradicting or explaining the deed, but for the purpose of determining which of two rules given by the statute altering the law of the contract does-really govern the case.
The argument that the exception, if it receives the construction which the court seems inclined to give it, would destroy the rule, must be founded on a supposition that in every case, the circumstances would be looked into,, and a slight injustice in the application of the scale of depreciation to the contract, would be deemed a sufficient motive for departing from it. But this is not the opinion of the court, and it may very readily be perceived,, that the great mass of contracts made during the circulation of paper money, may be decided by a general scale estimating the value of those contracts, although there may be very strong features in some few cases, which distinguish them as of such peculiar character, that they are embraced by the clause which measures their value by the standard of justice.
3d. But although the just construction of the 5th section of the law admits a creditor, who would be greatly injured by the application of the general *14 rule to his case, to show circumstances which authorize a departure from that rule ; it is contended, that such circumstances have not been shown in the cause under consideration. It is said, that the case ought to be an extraordinary one ; that the circumstances ought to be uncommon, which would warrant a departure from the general principle established for the government of contracts generally.
*This is true, and the court would certainly not feel itself at liberty to exercise, on a common occasion, a discretionary power, limited only by the opinion entertained of the naked justice’ of the case. But this appears to the court to be an extraordinary case. The evidence goes a great way in proving that the parties to the' contract believed that the sums becoming due under it, would at no distant period be payable in specie only. This testimony is the more to be credited, because it is not easy to conceive any other motive for disposing of the property on the terms on which it was parted with ; and still more, because such was the operation of the existing law on the contract, when it was entered into. Under this impression, an impression warranted by the law of the land, a very valuable property has been conveyed away for what would have been, under the then existing law, a full consideration, but which a subsequent act of the legislature has reduced certainly to a tenth, perhaps to a twentieth, of the real value of the estate disposed of. Such a case is, in the opinion of the court, an extraordinary case, which is completely entitled to the extraordinary relief furnished by the act which has occasioned the mischief.
In inquiring to what extent this relief ought to be afforded, or, in the words of the law, what “ judgment will be just and equitable,” the court can perceive no other guide by which its opinion ought, in this case, to be regulated, but the real value cf the property at the time it was sold. • The record does not furnish satisfactory evidence of this value. It is proved, that a lot not superior to that which occasioned the present contest, rented in the year 1774, for 13?. 5s. per annum, and that other lots, perhaps not equal to it, rented in 1784, for 25?. per annum. It is even proved, that a small j>art of the very lots, about the value of which the inquiry is now to be made, rented in the year 1784, on a ground-rent for ever, for 25?. 16s. per annum. These are very strong circumstances in support of the decree of the circuit court, rent at 26^- Per annum, *the nominal sum mentioned in the lease. But a majority of the judges are of opinion, that the value must be ascertained by a less erring standard.
Neither the value in 1774, nor in 1784, ought to regulate the rent. The value at the date of the contract must be the sum which in equity and justice the lessee ought to pay, and as this value is not ascertained by the testimony in the record, it ought to be found by a jury. In finding this value, however, the jury ought not to be governed by the particular difficulty of obtaining gold and silver coin at the time, but their conduct ought to be regulated by the real value of the property, if a solid equivalent for specie had been made receivable in lieu thereof. On these principles, the court has directed the following decree :
This cause, which was abated by the death of the appellee, and was revived in the name of his administrator, came on to be heard on the transcript of the record, and was fully argued by counsel. On consideration whereof, the court is of opinion, that there is error in the decree of the circuit court in *15 this ; that the rents reserved in the lease in the proceedings mentioned, bearing date the 5th day of August, in the year of our Lord, one thousand seven hundred and seventy-nine, and which were in arrear and unpaid, were decreed to be paid at their value according to the scale of depreciation when the same became due ; and that those rents which accrued after the first of January 1782, are decreed to be paid according to the nominal sum mentioned in the lease; whereas, the annual rent reserved in the said lease ought to be reduced to such a sum in specie, as the property conveyed was, at the date of the contract, actually worth; to ascertain which, the evidence of the cause not being sufficient for that purpose, an issue ought to have been directed, according to the verdict on which, if satisfactory to the court, the final decree ought to have been rendered.
This court is, therefore, of opinion, that the decree rendered in this cause in the circuit court for the county *of Alexandria, ought to be reversed, and it is hereby reversed and annulled ; and the court, proceeding to give such decree as the circuit court ought to have given, doth decree and order, that an issue be directed between the parties, to be tried at the bar of the said circuit court, in order to ascertain what was the actual annual value in specie, or in any other money equivalent thereto, of the half-acre lot of ground which was conveyed, by the executors of John Alexander, deceased, to Abraham Faw, on the 5th day of August 1779, and that in the account between the parties, in order to a final decree, the representatives of said Philip Marsteller be allowed a credit for the rent which has accrued, and which remains unpaid, estimating the said annual rent at such sum as the verdict of a jury, to be approved of by the said circuit court, shall ascertain the half-acre lot of ground before mentioned to have been fairly worth, at the date of the contract under which the same is claimed by the said Abraham Faw.