FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO JAVIER REYES-
CORADO,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,

*Respondent*.

No. 18-70225

Agency No.
A098-799-409

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 20, 2023
Pasadena, California

Filed August 11, 2023

Before:  Kim McLane Wardlaw and Lucy H. Koh, Circuit
Judges, and Colleen McMahon,* District Judge.

Opinion by Judge Koh

---

* The Honorable Colleen McMahon, United States District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of Francisco Reyes-Corado's motion to reopen removal proceedings based on changed circumstances, and remanded.

The Board denied reopening based, in part, on Reyes-Corado's failure to include a new application for relief, as required by 8 C.F.R. § 1003.2(c)(1). The government acknowledged that under *Aliyev v. Barr*, 971 F.3d 1085 (9th Cir. 2020), the Board erred to the extent it relied on Reyes-Corado's failure to submit a *new* asylum application for relief. Here, however, unlike in *Aliyev*, Reyes-Corado did not include his *original* asylum application with his motion to reopen. Consistent with the plain text of § 1003.2(c)(1) and various persuasive authorities, the panel held that a motion to reopen that adds new circumstances to a previously considered application need not be accompanied by an application for relief.

The Board also denied reopening after concluding that Reyes-Corado did not establish materially changed country conditions to warrant an exception to the time limitation on his motion to reopen. Reyes-Corado initially sought asylum relief based on threats he received from his uncle's family members to discourage him from avenging his father's murder by his uncle's family. The Board previously concluded that personal retribution, rather than a protected

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ground, was the central motivation for the threats of harm. In his motion to reopen, Reyes-Corado presented evidence of persistent and intensifying threats.

As an initial matter, the panel explained that the changed circumstances Reyes-Corado presented were entirely outside of his control, and thus were properly understood as changed country conditions, not changed personal circumstances. The panel also held that these changed circumstances were material to Reyes-Corado's claims for relief because they rebutted the agency's previous determination that Reyes-Corado had failed to establish the requisite nexus between the harm he feared and his membership in a familial particular social group. The panel explained that the Board's previous nexus rationale was undermined by the fact that the threats, harassment, and violence persisted despite the lack of any retribution by Reyes-Corado's family against his uncle's family for at least fourteen years after Reyes-Corado's father's murder, and where multiple additional family members were targeted, including elderly and young family members who would be unlikely to carry out any retribution. Thus, the panel held that the Board abused its discretion in concluding that Reyes-Corado's evidence was not qualitatively different than the evidence at his original hearing.

The panel also declined to uphold the Board's determination that Reyes-Corado failed to establish prima facie eligibility for relief because Reyes-Corado's new evidence likely undermined the Board's prior nexus finding, and the Board applied the improperly high "one central reason" nexus standard to Reyes-Corado's withholding of removal claim, rather than the less demanding "a reason" standard.

The panel remanded for the Board to reconsider whether Reyes-Corado established prima facie eligibility for relief and to otherwise reevaluate the motion to reopen in light of the principles set forth in the opinion.

## COUNSEL

David A. Schlesinger (argued), Kai Medeiros, and Paulina Reyes, Jacobs & Schlesinger LLP, San Diego, California, for Petitioner.

Enitan O. Otunla (argued), Trial Attorney; Bernard A. Joseph, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice; Washington, D.C.;  for Respondent.

## OPINION

KOH, Circuit Judge:

Francisco Reyes-Corado ("Reyes-Corado"), a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying Reyes-Corado's motion to reopen.  We grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.[1]

---

[1] Reyes-Corado has filed a separate petition for review of the BIA's denial of a subsequent motion to reopen.  We address Reyes-Corado's petition for review in Case No. 21-149 separately.

## BACKGROUND AND PROCEDURAL HISTORY

Reyes-Corado entered the United States in 2000. During proceedings before an immigration judge ("IJ") in 2005 and 2006, Reyes-Corado sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") based on strife within his extended family during and after the Guatemalan Civil War.

During that war, Reyes-Corado's father, Noe Reyes, and his paternal uncle, Simon Reyes, fought on opposite sides. Noe Reyes belonged to *Comisariados del Ejército*, an auxiliary group affiliated with the Guatemalan military, and acted as an informant to the military. Simon Reyes fought on the guerrillas' side. Simon killed his nephew—the son of the sister of Simon and Noe—in 1990. Then, in the early 1990s, Simon disappeared and Simon's son was murdered. Simon's family believed the *Comisariados* kidnapped Simon and blamed Noe for Simon's disappearance.

The Guatemalan Civil War formally ended in 1996. In 2003, a few years after Reyes-Corado's arrival in the United States, Simon's sons shot and killed Reyes-Corado's father, Noe, in his home. Reyes-Corado presented evidence of his father's murder to the IJ. Reyes-Corado's application for relief was also based on threats that had been made against him personally since his father's murder. Letters from Reyes-Corado's mother, grandmother, and aunt described vivid threats from Simon's sons that Reyes-Corado would meet the same fate as his father. Reyes-Corado testified repeatedly before the IJ that Simon's sons would try to kill Reyes-Corado "as a precaution" to prevent him from avenging his father's death.

The IJ granted asylum, finding that the death threats against Reyes-Corado constituted past persecution. The

BIA reversed the IJ's decision. The BIA concluded that Reyes-Corado, who left Guatemala in 2000, before his father's murder in 2003 and the subsequent threats, did not experience any harm rising to the level of persecution before leaving Guatemala and thus did not experience past persecution. The BIA further found that Reyes-Corado did not demonstrate a well-founded fear of future persecution on account of a protected ground because "[a]lthough [Reyes-Corado's] father was murdered by relatives because of an intra-family dispute dating back to the civil war, and [Reyes-Corado] was threatened by the same relatives, it d[id] not appear that [Reyes-Corado] was threatened simply because he was a member of his father's family." The BIA thus vacated the IJ's grant of asylum.[2]

Reyes-Corado sought reconsideration of this decision.[3] In denying reconsideration, the BIA expanded upon its prior nexus finding:

> There is . . . insufficient indication that [Reyes-Corado] was threatened and would be targeted for harm primarily due to his family membership, as [Reyes-Corado] himself testified that the sons of his missing uncle threatened him because "they surely believe

---

[2] The BIA remanded for the IJ to consider Reyes-Corado's eligibility for the other forms of relief he sought. On remand, the IJ denied Reyes-Corado's applications for withholding of removal and CAT protection.

[3] Reyes-Corado also appealed the denial of withholding of removal and CAT protection. The BIA found that, having failed to meet the lower burden of proof for asylum, Reyes-Corado was not eligible for withholding of removal. The BIA affirmed the IJ's determination that Reyes-Corado had not made the requisite showing of government acquiescence for CAT relief.

that [Reyes-Corado] would want to kill them" for murdering his father. The record establishes that personal retribution, not any protected ground, was the central motivation for the threats of harm against [Reyes-Corado] lodged by his cousins.

The BIA also found that Reyes-Corado failed to satisfy his burden to show that he could not reasonably avoid harm by relocating to another part of Guatemala. This court denied Reyes-Corado's petition for review of the BIA's decision. *Reyes-Corado v. Holder*, 584 F. App'x 322 (9th Cir. 2014).

In 2017, Reyes-Corado moved to reopen removal proceedings. He argued that the motion was timely because circumstances had changed in Guatemala and, based on those changes, he could show prima facie eligibility for relief from removal. *See* 8 C.F.R. § 1003.2(c)(3)(ii). Specifically, as described in detail in Section II, he argued that Simon's sons' threats against Reyes-Corado and his family had persisted and intensified, materially affecting Reyes-Corado's eligibility for relief.

The BIA denied reopening, and Reyes-Corado timely petitioned for review of that decision.

## STANDARDS OF REVIEW

The BIA's denial of a motion to reopen is reviewed for abuse of discretion, and this court "defer[s] to the BIA's exercise of discretion unless it acted arbitrarily, irrationally, or contrary to law." *Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010). Within that rubric, the court reviews the BIA's determination of purely legal questions de novo and its factual findings for substantial evidence. *Id.*

"Motions to reopen are disfavored due to the 'strong public interest in bringing litigation to a close.'" *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 800 (9th Cir. 2022) (quoting *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1150 (9th Cir. 2010) (per curiam)).  At the same time, however, we have emphasized that judicial review of motions to reopen serves as an important "safety valve" in the asylum process, ensuring that the BIA "'considers new information' bearing on applicants' need for and right to relief." *Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004)); *see also Kucana v. Holder,* 558 U.S. 233, 242 (2010).

## DISCUSSION

### I.

The BIA's first stated reason for denying the motion to reopen was that Reyes-Corado had not "submitted a new asylum application."  The BIA cited 8 C.F.R. § 1003.2(c)(1), which provides in relevant part:

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material.  A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation.

In *Aliyev v. Barr*, 971 F.3d 1085, 1086 (9th Cir. 2020), we held that "[t]he plain and unambiguous text of § 1003.2(c)(1) does not require [a petitioner seeking to reopen a prior asylum application based on changed

conditions] to attach a new application for relief to a motion to reopen." As the government acknowledged at oral argument, *Aliyev* thus makes clear that the BIA erred to the extent it relied on Reyes-Corado's failure to submit a *new* asylum application.

Here, however, unlike in *Aliyev*, Reyes-Corado did not include his original asylum application with his motion to reopen. *See id.* at 1086–87. The question here, which was not before the *Aliyev* court, is whether a petitioner's failure to attach any application for relief is an appropriate basis on which to deny a motion to reopen.

We have long read 8 C.F.R. § 1003.2(c)(1) to contemplate two kinds of motions to reopen: those raising changed circumstances affecting a previously raised claim, and those "for the purpose of submitting an application for relief." *See, e.g.*, *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1063 (9th Cir. 2008) ("A motion to reopen is based on factual grounds, and seeks a fresh determination based on newly discovered evidence or a change in the applicant's circumstances since the time of the hearing. A petitioner may *also* move to reopen for the purpose of submitting a new application for relief, provided such motion is accompanied by the proper application for relief . . . ." (emphasis added) (citation omitted)), *overruled on other grounds by Cheneau v. Garland*, 997 F.3d 916 (9th Cir. 2021); *see also Etemadi v. Garland*, 12 F.4th 1013, 1027 (9th Cir. 2021) (holding that "[t]he unambiguous language of § 1003.2(c)(1) describes two kinds of motions to reopen," making "a clear distinction between a motion to reopen proceedings and a motion to reopen proceedings for the purpose of submitting an

application for relief"), *reh'g granted, opinion withdrawn*, 36 F.4th 1238 (9th Cir. 2022).[4]

Consistent with the plain text of § 1003.2(c)(1) and various persuasive authorities, we hold that the first type of motion to reopen—one, like Reyes-Corado's, that adds new circumstances to a previously considered application—need not be accompanied by an application for relief. *Accord Liang Wang v. Whitaker*, 743 F. App'x 867, 868 (9th Cir. 2018) ("Where, as here, the petitioner does not seek a new form of relief but rather review of a previously submitted application available to the BIA, the original application need not be attached."); *Tanusantoso v. Barr*, 962 F.3d 694, 700–01 (2d Cir. 2020) ("[T]he language 'for the purpose of submitting an application for relief' must be given effect; a motion to reopen for the purpose of submitting an application for relief has to be a particular kind of motion to reopen, with particular procedural requirements." (quoting 8 C.F.R. § 1003.2(c)(1))); *Etemadi*, 12 F.4th at 1028 ("There are two kinds of motions to reopen, and those that are 'for the purpose of submitting an application for relief' require an attachment of the 'appropriate application.' The other kind does not." (quoting 8 C.F.R. § 1003.2(c)(1))).

Requiring Reyes-Corado to attach a previously submitted application would be a needless formality. *Cf. Abassi v. INS*, 305 F.3d 1028, 1031 (9th Cir. 2002) (concluding that a pro se movant's "failure to staple" a

---

[4] *Etemadi* reached the same result we reach today. Although the opinion was withdrawn upon the grant of panel rehearing and is thus not binding, we find its reasoning persuasive. *Cf., e.g.*, *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1024 (9th Cir. 2010) ("Although we are not bound by our vacated decision in *Lockyer*, we find its reasoning persuasive . . . .").

country profile that was "easily available to the BIA" to a motion to reopen that referred to that profile did not "excuse the BIA from an obligation to consider" the profile). Indeed, the BIA was clearly aware of Reyes-Corado's original application because it cited the 2005 asylum application in its order denying reopening.

## II.

The BIA also concluded that Reyes-Corado's motion to reopen did not show changed circumstances in Guatemala and was thus time-barred. Ordinarily, a motion to reopen must be filed within ninety days of a final administrative order of removal. 8 C.F.R. § 1003.2(c)(2). There is no time limit, however, for a motion "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* § 1003.2(c)(3)(ii); *see also* 8 U.S.C. § 1229a(c)(7)(C)(ii).

With his 2017 motion to reopen, Reyes-Corado submitted a declaration detailing Simon's sons' actions and threats against Reyes-Corado's immediate family in Guatemala that had occurred after (or that Reyes-Corado discovered after) the 2006 IJ hearing. The facts alleged in the declaration must be accepted as true for purposes of ruling on the motion to reopen. *Limsico v. INS*, 951 F.2d 210, 213 (9th Cir. 1991) (noting "the rule that requires the [BIA] to accept as true facts alleged in petitioner's affidavits in support of reopening"). Such facts show that Simon's sons continued, even fourteen years after Noe's death, to make death threats against Reyes-Corado. As explained in more detail below, the declaration also shows an escalating campaign of threats, harassment, and physical violence

against Reyes-Corado's family in Guatemala, including children and Reyes-Corado's elderly mother.

The BIA concluded that this evidence did not satisfy § 1003.2(c)(3)(ii)'s changed circumstances exception. According to the BIA, "the additional evidence attached to [Reyes-Corado's] motion does not demonstrate worsening country conditions or circumstances material to [Reyes-Corado's] claim" because it "describes ongoing, intra-family animosity that predated the [IJ's] hearing" and "continues through to the present time." Thus, the BIA found Reyes-Corado's fear of harm "a continuation of conditions presented to the [IJ]" at the prior hearing. This was an abuse of discretion.

As an initial matter, the "intra-family" nature of the purported changed circumstances does not, as the government contends, take this case outside 8 C.F.R. § 1003.2(c)(3)(ii). "'[A] self-induced change in personal circumstance[,]' such as a child's birth in the United States[,] does not suffice for changed country circumstances purposes." *Kaur v. Garland*, 2 F.4th 823, 830 (9th Cir. 2021) (quoting *He v. Gonzales*, 501 F.3d 1128, 1132 (9th Cir. 2007)); *see also Rodriguez v. Garland*, 990 F.3d 1205, 1209–10 (9th Cir. 2021). However, "changed circumstances [that] occur in the country of nationality or the country to which removal is ordered, and are entirely outside the petitioner's control," may constitute changed country circumstances "even if they are personal, painful, or life-altering." *Kaur*, 2 F.4th at 831; *accord Lin Xing Jiang v. Holder*, 639 F.3d 751, 756 (7th Cir. 2011) ("A changed circumstance need not reach the level of a broad social or political change in a country; a personal or local change might suffice.").

The events that Reyes-Corado contends constitute changed circumstances occurred in Guatemala and were "entirely outside [Reyes-Corado's] control; [he] did not volitionally change or affect them." *Kaur*, 2 F.4th at 831. Therefore, such events are properly understood as changed country conditions, not changed personal circumstances, for purposes of ruling on a motion to reopen. *See id.* at 830–31 (petitioner's "husband's death in India and the ensuing threats from her in-laws" constituted "more than a personal change in circumstances").

Thus, the question before us is whether Reyes-Corado's new evidence shows a change that is material to his claim for relief.[5]   We have addressed that question by asking whether the new evidence is "'qualitatively different' from the evidence presented at the previous hearing." *Najmabadi*, 597 F.3d at 987.   "The critical question is not whether the allegations bear some connection to a prior application, but rather whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004).   Under this standard, a change in circumstances need not be "dramatic," especially where, as here, conditions were already severe at the time of the original proceedings. *See Joseph v. Holder*, 579 F.3d 827, 833 (7th Cir. 2009) (rejecting "dramatic change" standard).

The government does not contend that there has been *no* change in circumstances in Guatemala.   Since the 2006 IJ hearing, Simon's sons started making death threats against

---

[5] The government does not dispute that the evidence "could not have been discovered or presented at the previous hearing."   8 C.F.R. § 1003.2(c)(3)(ii).

other members of Reyes-Corado's immediate family. Simon's sons also started physically harming these other family members. The actions alleged in the declaration attached to Reyes-Corado's motion to reopen include the following:

- On December 24, 2007, Simon's sons shot Reyes-Corado's family's house during the family's Christmas celebration. Reyes-Corado's niece "narrowly escaped" being hit by a bullet that came through the wall.

- On February 14, 2009, Simon's sons threatened Reyes-Corado's mother and sisters, telling them that if they did not provide Reyes-Corado's address in the United States, Simon's sons would kill Reyes-Corado's mother and sisters the way they killed Reyes-Corado's father.

- In 2010, one of Simon's sons began killing Reyes-Corado's mother's hogs with guns and poisoning her chickens.

- Also in 2010, one of Reyes-Corado's sisters overheard Simon's sons talking about how they had a "radio" that let them listen in on Reyes-Corado's family's phone calls and how they wanted to find out where in the United States Reyes-Corado was.

- In March 2011, Simon's sons started showing up regularly at Reyes-Corado's sister Rosa's new house, showing their guns and laughing.

- On January 10, 2013, one of Simon's sons showed up at Reyes-Corado's sister Alma's house, hit her on the shoulder, and threatened to kill her and her children.

- On July 14, 2016, one of Simon's sons approached Rosa's husband, Rildo (Reyes-Corado's brother-in-law) on Reyes-Corado's family's property with a gun in hand, then threatened to kill Rildo and pushed him to the ground, hurting his back.

- In October 2015, Simon's sons shot at the family home, threatened Reyes-Corado's mother, and shouted insults at the family. Reyes-Corado's mother had a nervous breakdown as a result and was hospitalized overnight.

- In November 2016, Simon's sons shot at the family home again and threatened to kill Reyes-Corado's mother and family.

- On December 31, 2016, Simon's sons left Reyes-Corado's family a note reading, "You are going to die, dogs."

- On February 14, 2017, Simon's sons left Reyes-Corado's family a note reading, "We already killed the first one, Paco is next." Paco is Reyes-Corado's nickname.

- On May 8, 2017, an unknown boy approached Rosa in town and told her that Simon's son was near. Simon's son then shot into the air.

- On May 10, 2017, Simon's sons insulted Reyes-Corado's mother at a Mother's Day celebration and told her they would leave a surprise for her at the cemetery. The next day, Rosa visited the cemetery and found Noe's tomb destroyed.

- Later in May 2017, Reyes-Corado's brother-in-law Rildo was hospitalized for three days after eating a banana from his banana crop. Simon's sons had poisoned Rildo and his wife Rosa's banana crops.

These incidents, according to Reyes-Corado's affidavit, are "just a few of the many that have affected [his] family," who receive threats on a "weekly to bi-monthly basis." Moreover, Simon's sons are "constantly" asking where Reyes-Corado is.

These changes are material to Reyes-Corado's claims for relief because they "rebut[] the [agency's] finding 'that provided the basis' for denying relief" previously. *Darby v. Att'y Gen.*, 1 F.4th 151, 160 (3d Cir. 2021) (quoting *Khan v. Att'y Gen.*, 691 F.3d 488, 497 (3d Cir. 2012)). During the 2006 IJ hearing, Reyes-Corado repeatedly testified that he feared harm from Simon's sons because they would try to prevent Reyes-Corado from seeking retribution for his father's death. On the basis of this testimony, the BIA found that Reyes-Corado failed to establish the requisite nexus between the harm he feared and his membership in the familial particular social group. The BIA's denial of relief was premised on this nexus finding.

The fact that the threats, harassment, and violence persisted for at least fourteen years after Noe was murdered

in 2003 without retaliation from Reyes-Corado's family undermines this rationale. *See Garcia v. Wilkinson*, 988 F.3d 1136, 1145 (9th Cir. 2021) (noting that "sweeping retaliation towards a family unit over time can demonstrate a kind of animus distinct from 'purely personal retribution'" and can "demonstrate nexus if . . . persecutors 'specifically sought out the "particular social group" of [petitioner's] family'" (quoting *Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018))). So, too, does the fact that the evidence of death threats before the IJ consisted solely of threats against Reyes-Corado,[6] while the new evidence shows death threats (coupled with poisoning and physical violence) against multiple other members of Reyes-Corado's family in Guatemala.[7] This includes Reyes-Corado's elderly mother and his young nieces and nephews. As Reyes-Corado points out, the fact that Simon's sons have terrorized and threatened Reyes-Corado's elderly mother, even though it is unlikely Simon's sons fear retribution from her, further indicates that the feared persecution is on account of family membership rather than the agency's earlier reasoning about a preemptive response to retribution.

---

[6] It is true that the evidence before the IJ also included Noe's murder. But to focus on the murder as an indication that country circumstances have not worsened misapprehends the question. The question is not whether the actions have gotten more serious or violent *in the abstract*. It is whether the actions have made it so that *Reyes-Corado* "now has a well-founded fear of persecution" on account of a protected ground. *See Malty*, 381 F.3d at 945.

[7] Further, the new evidence undermines the BIA's internal relocation finding, which was upheld by the Ninth Circuit. *Reyes-Corado*, 584 F. App'x at 325. The new evidence shows that since the IJ hearing, Simon's sons had begun trying to find out where Reyes-Corado lived in the United States, including by listening in on Reyes-Corado's family's phone calls with Reyes-Corado.

This court's decision in *Bhasin v. Gonzales*, 423 F.3d 977 (9th Cir. 2005), is instructive in this respect. In *Bhasin*, the petitioner had testified at the IJ hearing that her two sons had gone missing and that Bhasin herself had been kidnapped, beaten, detained, and told that "her whole family would be eliminated." *Id.* at 985. However, the agency "originally denied relief" because it found that the persecutors were "not motivated by [Bhasin's] membership in a [familial] social group, but rather by a desire to locate [Bhasin's son], or as a means of retribution against [Bhasin's son]." *Id.* In support of this finding, the BIA noted that "other close members of [Bhasin's] family are living in India without difficulty." *Id.* In her motion to reopen, however, Bhasin presented evidence about other relatives' disappearances that "completely undermined this rationale for concluding that the [nexus] requirement had not been satisfied." *Id.* "[B]ecause of th[e] direct relationship between the [BIA's] justification for its initial denial and Bhasin's newly presented evidence," we found it "perplex[ing]" that the BIA concluded that the evidence presented in the motion to reopen was "not highly probative." *Id.* at 986. Accordingly, we concluded that the BIA abused its discretion in denying the motion to reopen. *Id.* at 989.

The motion to reopen in *Bhasin* was filed within ninety days of the final administrative decision, so the question was not whether Bhasin's motion showed "changed circumstances" within the meaning of 8 C.F.R. § 1003.2(c)(3)(ii). *See* 423 F.3d at 982. Nevertheless, the question the *Bhasin* court addressed—whether "the new evidence, when considered together with the evidence presented at the original hearing, would establish prima facie eligibility for the relief sought," *id.* at 984—is clearly

relevant to whether circumstances have changed sufficiently such that a petitioner who previously did not have a legitimate claim for asylum or other relief now does, *see Malty*, 381 F.3d at 945 (articulating the "critical question" in evaluating changed circumstances under 8 C.F.R. § 1003.2(c)(3)(ii)).[8]

The government emphasizes that Reyes-Corado "fears the same mistreatment" he feared during the original proceedings. However, our case law makes clear that this is not disqualifying, so long as the new circumstances take that fear across the threshold for a well-founded fear of future persecution or otherwise materially affect the petitioner's entitlement to relief. *See, e.g.*, *Malty*, 381 F.3d at 945–46; *Agonafer v. Sessions*, 859 F.3d 1198, 1207 (9th Cir. 2017); *see also, e.g.*, *Cabas v. Barr*, 928 F.3d 177, 181–82 (1st Cir. 2019). Reyes-Corado's new evidence is capable of doing just that. The new evidence not only shows that Reyes-Corado's fear of persecution has become more serious and more real; it also shows that the agency's prior nexus finding—that any feared harm would be retribution-based—was not borne out.

The BIA thus abused its discretion in determining that Reyes-Corado had not provided qualitatively different evidence.

## III.

The BIA also suggested, as a third and final reason for denying reopening, that Reyes-Corado had not shown prima

---

[8] Indeed, other changed circumstances cases have relied on *Bhasin* in evaluating the required showing under 8 C.F.R. § 1003.2(c)(3)(ii). *See, e.g.*, *Najmabadi*, 597 F.3d at 990; *Agonafer v. Sessions*, 859 F.3d 1198, 1204–05 (9th Cir. 2017).

facie eligibility for the underlying relief. We decline to uphold the BIA's decision on that ground. Indeed, the government does not argue that this ground suffices to deny the petition for review.

The BIA limited its discussion of prima facie eligibility for relief to nexus, concluding that, "[a]s previously determined, personal retribution appears to be the central motivation for the harm, not a protected ground." However, as discussed above, Reyes-Corado's new evidence likely undermines the prior nexus finding.

Further, the BIA applied an improperly high nexus standard. For withholding of removal, an applicant must show that a protected ground would be "a reason" for the persecution, a "less demanding standard" than the "one central reason" standard for asylum. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017). The government acknowledges that notwithstanding the BIA's citation to *Barajas-Romero*, the BIA applied the higher "one central reason" standard, rather than the correct "a reason" standard, to Reyes-Corado's withholding claim. *See Garcia*, 988 F.3d at 1147 ("[A]lthough the BIA decision cited . . . our *Barajas-Romero* decision, which distinguished between the 'one central reason' and 'a reason' standards, the BIA's analysis is inconsistent with any serious consideration of the difference.").

\*       \*       \*

At this stage, Reyes-Corado was not required to "conclusively establish" his entitlement to relief. *Salim*, 831 F.3d at 1139 (quoting *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003)). "A party demonstrates prima facie eligibility for relief 'where the evidence reveals a reasonable likelihood that the statutory requirements for relief have

been satisfied.'" *Kaur*, 2 F.4th at 833 (quoting *Salim*, 831 F.3d at 1139). We remand for the BIA to reconsider whether Reyes-Corado established prima facie eligibility for relief and otherwise reevaluate the motion to reopen in light of the principles set forth in this opinion.

**PETITION GRANTED; REMANDED.**