NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 14 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

VAHAGN ABRAHAMYAN; LILYA
ABRAHAMYAN,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-1945

Agency Nos.
A209-763-320
A209-763-319

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 25, 2024[**]
San Francisco, California

Before: PAEZ, NGUYEN, and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY.

Vahagn Abrahamyan ("Abrahamyan") and his daughter Lilya, who is a

derivative beneficiary, entered the United States in November 2016. Abrahamyan

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

is a 42-year-old native and citizen of Armenia. He sought asylum, withholding of removal, and protection under the Convention Against Torture, which an Immigration Judge ("IJ") denied in 2017. The Board of Immigration Appeals ("BIA") dismissed his appeal, and the Ninth Circuit denied his petition for review, *Abrahamyan v. Barr*, 831 F. App'x 286 (9th Cir. 2020). In 2021, he filed a motion to reopen past the 90-day deadline, *see* 8 U.S.C. § 1229a(c)(7)(C)(i), invoking (1) equitable tolling based on ineffective assistance of counsel; and (2) the exception on changed country conditions. The BIA denied Abrahamyan's motion to reopen, and he appeals that decision. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition.

"A denial of a motion to reopen is reviewed for abuse of discretion." *Aguilar Fermin v. Barr*, 958 F.3d 887, 892 (9th Cir. 2020) (citing *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016)).

1. The BIA did not abuse its discretion in refusing to apply equitable tolling. Equitable tolling requires a petitioner to "demonstrate[] due diligence in discovering counsel's fraud or error." *Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011). Factors relevant to this determination include (1) "if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying her motion to reopen"; and (2) "whether petitioner took reasonable

2

steps to investigate the suspected fraud or error." *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011).

Abrahamyan claims counsel was ineffective in three respects: (1) "failure to advise Mr. Abrahamyan of the need for corroborating evidence," (2) "failure to elicit vital testimony," and (3) "failure to address the IJ's stated reasons for denial and failure to address certain arguments resulting in waiver of those issues."

First, the BIA reasonably concluded that Abrahamyan should have suspected any error related to the lack of corroboration, because it was apparent throughout the proceedings: when the IJ asked whether he had "any letters from anyone in Armenia that would corroborate or verify [his] claims," in the IJ's decision which discusses the lack of corroborating evidence and specifically suggests this "very well may perhaps be an issue from past counsel," and in the BIA decision. Although Abrahamyan claims that he was "shocked" when he learned the IJ relied in part on lack of corroborating evidence, he did not take "steps to investigate" until well after the entry of the BIA's order. *Id*. Second, the BIA reasonably concluded that Abrahamyan should have also suspected any deficiency regarding his parents' testimony, since both the IJ and BIA decisions note the lack of testimony from his parents concerning any "visible signs" that he had been beaten. Finally, the BIA reasonably concluded that Abrahamyan should have suspected counsel's waiver of certain arguments because the BIA decision states that he "has

3

waived the opportunity to challenge the [IJ's] implausibility findings by not contesting them on appeal." Because the BIA's findings are not "arbitrary, irrational, or contrary to law," *Bonilla*, 840 F.3d at 581 (quoting *Avagyan*, 646 F.3d at 678), Abrahamyan is not entitled to equitable tolling.

2. The BIA abused its discretion in finding that the changed country conditions exception to the 90-day deadline for filing a motion to reopen did not apply. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). Abrahamyan argues that conditions in Armenia have changed since his 2017 merits hearing, *see Agonafer v. Sessions*, 859 F.3d 1198, 1204 (9th Cir. 2017), due to threats received by his family.

The BIA found that the threats received by Abrahamyan's family did not "reflect a change in conditions nor establish prima facie eligibility."[1] *See Singh v. Garland*, 46 F.4th 1117, 1121 (9th Cir. 2022). But Abrahamyan's wife's "declaration . . . shows an escalating campaign of threats [and]

---

[1] Although the IJ found Abrahamyan not credible, in considering a motion to reopen, new evidence "must be addressed" if it is "based on information independent of the prior" adverse finding. *Singh v. Garland*, 46 F.4th 1117, 1122; *see also Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005) ("[F]acts presented in affidavits supporting a motion to reopen must be accepted as true unless inherently unbelievable."). The new evidence that Abrahamyan submits, including the declarations of his wife, uncle, and mother-in-law, are independent of Abrahamyan's prior testimony and "fills some gaps" upon which the IJ "expressly relied" in making the adverse credibility finding; thus, they must be considered. *Singh*, 46 F.4th at 1122. The BIA correctly did "not rely on the prior adverse credibility finding" in considering Abrahamyan's motion to reopen.

4

harassment . . . against [Abrahamyan's] family." *Reyes-Corado v. Garland*, 76 F.4th 1256, 1261–62 (9th Cir. 2023). She received calls from the Ministry of Defense after Abrahamyan's departure in 2016 regarding his whereabouts. Contrary to the BIA's characterization, her 2017 to 2019 interactions with officials did "intensif[y]" in comparison, because the later interactions involved concrete threats and even in-person harassment.

In December 2017, a caller from the Ministry of Defense told Abrahamyan's wife they knew Abrahamyan was in the United States, and called him "a traitor of our homeland." In March 2018, a caller alleging to be from the National Security Service ("NSS") "threatened with severe consequences for 'the traitor and his family.'" In April 2018, a caller also identifying himself as an NSS officer, "threatened to take revenge on [Abrahamyan's wife] and . . . children." Finally, in July 2019, men in plain clothes identifying themselves as NSS officers came to Abrahamyan's wife's house and yelled, "you will see what happens with traitors and their families." Abrahamyan's family faced an "escalating campaign of threats" after his 2017 hearing. *Reyes-Corado*, 76 F.4th at 1261–62. Because "such events are properly understood as changed country conditions" for purposes of a motion to reopen, *id.*, the BIA abused its discretion in finding otherwise.

The BIA also abused its discretion in finding that the new evidence did not establish prima facie eligibility for relief. Abrahamyan's wife's declaration

5

discusses his 2008 beating—that he returned home "tired, . . . emaciated, [with] marks on his face[, and] terribly hungry"—and his 2011 beating—that his "head was bandaged" and "he had bruises."  Together with the escalating threats to Abrahamyan's family, the new evidence is sufficient to make a "threshold showing," *Fonseca-Fonseca v. Garland*, 76 F.4th 1176, 1181 (9th Cir. 2023), of at least "a ten percent chance of persecution," *Al-Harbi v. I.N.S.*, 242 F.3d 882, 888 (9th Cir. 2001); *see Aden v. Wilkinson*, 989 F.3d 1073, 1083 (9th Cir. 2021) (finding petitioner established past persecution where he was beaten and his brother received death threats).

Thus, Abrahamyan's motion to reopen was timely under the changed country conditions exception to the 90-day motion to reopen deadline.  8 U.S.C. § 1229a(c)(7)(C)(ii).  We remand so that the BIA may consider the merits of Abrahamyan's motion in the first instance.[2]  *See I.N.S. v. Orlando Ventura*, 537

---

[2] Abrahamyan also argues that the promotion of Karlos—Abrahamyan's former commanding officer who beat him in 2011—to a higher position constitutes changed country conditions.  The BIA did not abuse discretion in finding this was not a material change.  As the BIA stated, there was "no indication that Karlos has issued or been involved in any way with the more recent threats made against the respondent" and therefore his promotion does not show the "individualized relevancy," *Sarkar v. Garland*, 39 F.4th 611, 622 (9th Cir. 2022) (quoting *Najmabadi v. Holder*, 597 F.3d 983, 989 (9th Cir. 2010)), required for materiality.  Despite broader political changes, conditions for individuals perceived to participate in anti-government activity had not materially changed, where country conditions evidence shows "there were no credible reports of political prisoners or detainees during [2020]."  *See Rodriguez v. Garland*, 990 F.3d 1205, 1210 (9th

U.S. 12, 16–17 (2002).

**PETITION GRANTED.**

---

Cir. 2021) (finding the BIA did not abuse discretion where the "country report omit[ted] any information on relevant changes").

*Abrahamyan et al. v. Garland.*, No. 22-1945
BUMATAY, J., dissenting:

To qualify for the changed country conditions exception to the 90-day bar for moving to reopen his petition for asylum and other relief, Vahagn Abrahamyan would need to present "material" evidence of changed country conditions in Armenia. 8 U.S.C. § 1229a(c)(7)(C)(ii). This new evidence also must have been "[un]available" previously and must be sufficient to establish prima facie eligibility for relief. *Id.* Our review of the BIA's decision only creates a higher bar. We review the BIA's denial of a motion to reopen for abuse of discretion. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 892 (9th Cir. 2020). And this high bar makes sense. After all, if our court granted motions to reopen immigration proceedings whenever we felt like it, then we would effectively be "permit[ting] endless delay of deportation by aliens creative . . . enough to continuously produce new and material facts sufficient to establish a prima facie case for relief." *INS v. Abudu*, 485 U.S. 94, 108 (1988) (simplified). So I would affirm the BIA's denial of Abrahamyan's motion to reopen, and I would deny the petition.

The BIA did not abuse its discretion in denying Abrahamyan's motion to reopen based on his failure to show materially changed country conditions in Armenia that demonstrate prima facie eligibility for relief. *See Singh v. Garland*, 46 F.4th 1117, 1121 (9th Cir. 2022) (setting the standard for untimely reopening); *see also* § 1229a(c)(7)(C)(ii).

1

The BIA found that the threats received by Abrahamyan's family after his 2017 immigration proceedings did not "reflect a change in conditions nor establish[ed] prima facie eligibility." Rather the BIA held that more recent incidents in Armenia show no more than a "continued interest" in Abrahamyan. The BIA did not abuse its discretion in this finding.

Yes, Abrahamyan's wife purportedly received phone calls from various government entities calling him a "traitor to the homeland" and warning of "consequences" for this. They threatened to take revenge. Men even came to his wife's house to yell at the family. But while perhaps frightening, these events cannot be characterized as an escalation. Compare these phone calls and yelling incident to the conduct experienced by Abrahamyan before 2017. Back then, Abrahamyan's wife received similar phone calls from individuals interested in him. And when Abrahamyan was still in Armenia, he was physically beaten.

Contrast this case with *Reyes-Corado v. Garland*, 76 F.4th 1256, 1261–62 (9th Cir. 2023), which found changed country conditions based on an "escalating campaign of threats, harassment, and physical violence against [the petitioner's] family in Guatemala, including children and [petitioner's] elderly mother." In that case, after the hearing, family members were shot at. *Id.* at 1263. Farm animals were killed. *Id.* Guns were brandished. *Id.* Food was poisoned. *Id.* There's no comparison between the severe escalation in *Reyes-Corado* to the continued verbal

2

harassment that took place here. So while the harassment Abrahamyan's wife and family suffered is regrettable, the BIA did not abuse its discretion in finding that it did not reach the level required to show a changed condition.

Besides the lack of changed country conditions, the BIA didn't abuse its discretion in finding that the new evidence did not establish a prima facie eligibility for relief. "[C]ases with threats alone, particularly anonymous or vague ones, rarely constitute persecution." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019); *see also Tamang v. Holder*, 598 F.3d 1083, 1094–95 (9th Cir. 2012) ("[V]ague threats made against [a petitioner's] family . . . do not compel a finding" that the "perceived fear of future persecution is . . . objectively reasonable"); *Hussain v. Rosen*, 985 F.3d 634, 647 (9th Cir. 2021) ("Unfulfilled threats are very rarely sufficient to rise to the level of persecution."). Again, that is all we have here. We have vague and generalized verbal threats. So the BIA did not abuse its discretion in finding that Abrahamyan had failed to establish prima facie eligibility for relief with this new evidence.

I agree with the majority that no other basis supports Abrahamyan's motion to reopen.

For these reasons, I respectfully dissent from the grant of the petition here.