**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RUPINDER SINGH,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,

*Respondent.*

No. 19-73107

Agency No.
A075-302-200

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 6, 2022
Portland, Oregon

Filed August 30, 2022

Before: Paul J. Watford, Ryan D. Nelson, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Immigration

Granting Rupinder Singh's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that the BIA erred in holding that an earlier adverse credibility finding barred Singh's motion to reopen, and in concluding that Singh failed to show that the conditions for Sikhs in India had changed qualitatively since his last hearing.

Singh initially sought asylum claiming that he was persecuted in India on account of being a Sikh who supports the creation of Khalistan and the Akali Dal (Mann) Party. An immigration judge denied Singh's claims after concluding that Singh's testimony was not credible because of inconsistencies and a lack of detail. The IJ also highlighted a State Department report showing that the situation for Sikhs had greatly normalized and, noting that Singh's family had not responded to his requests for documents, the IJ found further that Singh had failed to even establish his identity.

Singh sought to reopen based on changed country conditions, and the BIA concluded that Singh had not establish materially changed conditions. In doing so, the BIA noted that Singh's prior adverse credibility finding was relevant in considering the evidence of changed country conditions.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the BIA erred in concluding that Singh's motion was foreclosed by the prior adverse credibility determination. The panel explained that although the BIA may rely on a previous adverse credibility determination to deny a motion to reopen if that earlier finding still factually undermines the petitioner's new argument, here, Singh's motion included newly submitted evidence based on information independent of the prior adverse credibility finding. Among other documents, the motion to reopen included Singh's birth certificate, a letter from a Mann leader attesting to his membership in the party, and a letter from his mother stating that the police were looking for Singh. The panel explained that this evidence was independent of the facts that formed the prior credibility finding, and in fact filled some gaps on which the adverse credibility finding was predicated. The panel noted that the IJ had expressly relied on the lack of such corroborating evidence to find Singh not credible. Thus, the prior adverse credibility finding logically could not have implicated the newly submitted evidence.

The panel concluded that the BIA erred in rejecting Singh's new evidence for two other reasons. First, the panel held that the record did not support the BIA's determination that Singh was not similarly situated to the people harmed in 2017 political violence. The panel noted that news reports showed that in 2017 the Punjabi police determined that the Sikh insurgency was returning based on a string of killing of non-Sikhs. In response, the police arrested many Sikhs who were allegedly planning to carry out terror activities in the state. The reports also stated the police suspected that these alleged Sikh terrorists were recruited online and radicalized outside India. The panel wrote that these reports of worsening conditions link directly to Singh's claim because the affidavit from Singh's mother stated that the police were

looking for Singh in 2018 and suspected him of receiving military training in Pakistan.

Second, the panel held that Singh provided sufficient evidence demonstrating that the conditions for Sikhs in India had changed in the two decades since his asylum hearing. The panel explained that the BIA abuses its discretion when it concludes that the conditions portrayed in the evidence represent a mere continuation of existing conditions by disregarding the evidence of changed conditions. In this case, the country conditions evidence revealed a marked change both for Sikhs generally, and for Singh and his family specifically, compared to the conditions at the time of Singh's original hearing in 1997. The panel remanded for the agency to address Singh's new evidence.

Singh's motion also included a new claim for relief based on his membership in a family social group. Observing that this court has held that family is the "the quintessential particular social group," the panel concluded that the agency was correct that Singh did not establish any nexus between his family membership and the harm he fears, where Singh failed to present any argument that his family membership was "one central reason" or "a reason" for his alleged persecution and the persecution he fears. The panel explained that at most, the letter from his mother provided evidence that she was mistreated because of her kinship to him. But the BIA correctly concluded that Singh's mother's mistreatment does not show that Singh would be persecuted because of his relationship to her.

**COUNSEL**

Garish Sarin (argued), Law Offices of Garish Sarin, Los Angeles, California, for Petitioner.

Jeffery R. Leist (argued), Senior Litigation Counsel; Anthony C. Payne, Assistant Director; Ethan P. Davis, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

LEE, Circuit Judge:

We have held that the Board of Immigration Appeals (BIA) may rely on a prior adverse credibility determination to deny a motion to reopen if that earlier finding factually undercuts the petitioner's new argument. *Greenwood v. Garland*, 36 F.4th 1232, 1234 (9th Cir. 2022). But that does not mean the BIA can deny a motion to reopen just because that motion touches upon the same claim or subject matter as the previous adverse credibility finding. Here, Rupinder Singh submitted new evidence about religious persecution independent of the prior adverse finding. The BIA thus erred in holding that the earlier adverse credibility finding barred Singh's motion to reopen. The BIA also erroneously concluded that Singh failed to show that the conditions for Sikhs in India changed qualitatively since his last hearing. Clear evidence shows the contrary. We thus grant the petition and remand.

## BACKGROUND

Singh, a native and citizen of India, entered the United States without inspection in December 1996. Two months later, Singh sought asylum, claiming that he was persecuted in India on account of being a Sikh who supports the creation of Khalistan and the Akali Dal (Mann) Party.

At a November 1997 hearing, the Immigration Judge (IJ) denied Singh's claims after concluding that Singh's testimony was not credible because of inconsistencies and lack of detail. The IJ also highlighted a State Department report showing that "much of the random harassment [of Sikhs] has ended in India and that the situation has normalized to a great extent." The IJ further found that Singh had failed to even establish his identity, noting that his family had not responded to his requests for documents.

The BIA affirmed the IJ's decision in a summary order, and we held that substantial evidence supported the agency's adverse credibility determination. *See Singh v. Ashcroft*, 103 F. App'x 322, 322 (9th Cir. 2004).

Fourteen years later, Singh moved to reopen at the BIA, arguing that "there have been material changes" as to "how the majority Hindu government treats the minority Sikh community in India." Singh submitted the following new evidence: his Indian birth certificate, his California marriage license, his wife's application for asylum, his children's birth certificates and the application for asylum of his eldest daughter who is not a U.S. citizen, a letter from the Mann Party leader attesting to Singh's membership in the party, the Annual Report on India for 2016 by the Commission on International Religious Freedom, the May 2018 report from the Immigration and Refugee Board of Canada, several news articles reflecting new developments in India, a notarized

affidavit from his mother, Harbans Kaur, and a statement from his Sikh church in California dated November 11, 2017. The motion also included a new claim for relief based on Singh's membership in a particular social group of his family.

The BIA denied the motion to reopen after concluding that Singh has not shown that country conditions in India or Punjab changed materially or that he is prima facie eligible for asylum. The agency first observed that Singh's claim is the same one he presented in 1997 and that the agency's "prior adverse credibility finding is relevant in considering the evidence of changed country conditions." The BIA also found that Singh has not shown that (1) he is similarly situated as the individuals harmed in the political violence in 2017, or that (2) the conditions for the Sikh minority had significantly changed since 1997.

Finally, the BIA held that Singh has not shown that his family qualifies as a cognizable social group or that there is nexus between his membership in it and the harm he fears in India.

## STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017). Under this standard of review, we must uphold the agency's decision unless it is "arbitrary, irrational, or contrary to law." *Id.* (quotation omitted). We review the agency's factual findings for substantial evidence. *Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016). The court must "uphold the agency's determination unless compelled to the contrary." *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019) (internal quotation marks omitted).

## ANALYSIS

"An alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." *Mata v. Lynch*, 576 U.S. 143, 144 (2015); *see* 8 U.S.C. § 1229a(c)(7)(A). Ordinarily, a person may file only one motion to reopen, and the motion must be filed within 90 days of the removal order. 8 U.S.C. §§ 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c)(2). But "[t]here is no time limit on the filing of a motion to reopen" when the motion "is based on changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).[1]

To prevail on such a motion, a petitioner must (1) produce evidence that conditions have changed in the country of removal, (2) show that the evidence is material, (3) show that the evidence was unavailable and would not have been discovered or presented at the previous hearings, and (4) establish prima facie eligibility for the relief sought. *See Agonafer*, 859 F.3d at 1204. The new evidence based on changed country conditions must be "qualitatively different from the evidence presented at [the] asylum hearing." *Malty v. Ashcroft*, 381 F.3d 942, 945 (9th Cir. 2004).

---

[1] It is not clear from the record if the government issued a final removal order for Singh after our decision denying Singh's petition in 2004. Nor is it apparent how he managed to remain in the United States after our decision for *14 years* before he filed his motion to reopen. Oddly, a petitioner's probability of prevailing on a motion to reopen based on changed circumstances increases the longer he or she unlawfully stays here. But the statutory provision for a motion to reopen does not appear to impose any time limits for the changed circumstances exception. 8 U.S.C. § 1229a(c)(7)(C)(ii).

## I. The BIA erred in concluding that the prior adverse credibility finding rendered the changed country conditions immaterial.

In affirming the denial of Singh's claim, the BIA noted that the "prior adverse credibility finding is relevant in considering the evidence of changed country conditions." The BIA cited *Toufighi v. Mukasey* for the proposition that an "underlying adverse credibility determination rendered evidence of changed circumstances immaterial." 538 F.3d 988, 996–97 (9th Cir. 2008).

We recently held in *Greenwood* that the BIA "may rely on a previous adverse credibility determination to deny a motion to reopen if that earlier finding still factually undermines the petitioner's new argument." 36 F.4th at 1234. We endorsed the reasoning and conclusion of the BIA's decision in *Matter of F-S-N-* in which the BIA explained that "to prevail on a motion to reopen alleging changed country conditions where the persecution claim was previously denied based on an adverse credibility finding in the underlying proceedings, the respondent must either overcome the prior determination or show that the new claim is independent of the evidence that was found to be not credible." 28 I. & N. Dec. 1, 3 (B.I.A. 2020). Thus, "where such evidence is contingent, in part or in whole, on factors that were determined to lack credibility and have not been rehabilitated, the respondent's ability to successfully establish prima facie eligibility may be undermined." *Id.* at 4. But "if newly submitted evidence is based on information independent of the prior adverse credibility finding, it must be addressed." *Id.*

The BIA erred because the motion to reopen included "newly submitted evidence . . . based on information independent of the prior adverse credibility finding." *Id.*

Among other documents, the motion to reopen included Singh's birth certificate, a letter from the Mann leader attesting to his membership in the party, and a letter from his mother stating that the police were looking for Singh. This evidence was independent of the facts that formed the prior credibility finding. Indeed, the IJ had expressly relied on the *lack* of such corroborating evidence to find Singh not credible. The prior adverse credibility finding thus logically could not have implicated the newly submitted evidence. This new evidence "must be addressed" by the agency. *F-S-N*, 28 I. & N. Dec. at 4.[2]

This case differs from *Greenwood* in crucial respects. In *Greenwood*, the petitioner claimed that he feared returning to Jamaica because of his membership in the People's National Party. The IJ found that the petitioner "lacked the credibility to establish his true identity" based on his "use of multiple fake names, his fraudulent passport, and an inability to establish his true identity." *Greenwood*, 36 F.4th at 1234. In Greenwood's motion to reopen based on changed country conditions, the only new piece of information was that his nephew was allegedly murdered in 2017. *Id.* at 1234–35. We concluded that "the basis of Greenwood's motion to reopen . . . thus remain[ed] intertwined with his credibility problem." *Id.* at 1236. And because Greenwood lacked "the credibility to assert that he is a member of the People's National Party, it [did] not matter whether political violence against that party has worsened in Jamaica." *Id.* at 1235.

---

[2] The government's attempt to undermine the significance of this evidence misses the mark. Although the BIA may well have determined that the new evidence fails to establish prima facie eligibility for relief, the BIA did not say so, and we can only affirm a "BIA decision . . . only on the basis articulated in the decision." *Chae Kim Ro v. Immigration & Naturalization Serv.*, 670 F.2d 114, 116 (9th Cir. 1982).

In this case, by contrast, the new evidence submitted by Singh is independent of the evidence that the IJ relied on in making the adverse credibility finding. And in fact, the new evidence fills some gaps on which the adverse credibility finding was predicated. We thus hold that the BIA erred in finding Singh's motion to reopen foreclosed by the prior adverse credibility determination.

## II. The BIA erred in its evaluation of the changed country conditions evidence.

Besides relying on the prior adverse credibility finding, the BIA rejected Singh's evidence of changed country conditions on two grounds. First, the BIA concluded that Singh "has not shown that he is similarly situated as the individuals harmed in the political violence in 2017." Second, the BIA held that Singh "has not shown that the conditions or circumstances represent qualitatively changed country conditions, rather than the continuation of essentially the same or similar conditions at the time of his previous hearing in 1997." The BIA erred on both counts.

First, the record does not support the BIA's finding that Singh was not similarly situated to the people harmed in the 2017 political violence. The news reports show that in 2017 the Punjabi police determined that the Sikh insurgency was returning based on a string of killing of non-Sikhs. In response, the police arrested many Sikhs who were allegedly planning to carry out terror activities in the state. The reports also stated the police suspected that these alleged Sikh terrorists were recruited online and radicalized outside India. These reports of worsening conditions link directly to Singh's claim because the affidavit from Singh's mother states that the police were looking for Singh in 2018 and suspected him of receiving military training in Pakistan.

Second, Singh provided sufficient evidence that the conditions for Sikhs in India have changed in the two decades since his asylum hearing. Admittedly, the BIA can draw its own conclusions from contradictory and ambiguous country conditions reports. *See Singh v. Holder*, 753 F.3d 826, 833 (9th Cir. 2014). But "[t]his does not mean . . . that an applicant lacks judicial review of the BIA's determination." *Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 1000 (9th Cir. 2003). For example, we have held that the BIA abuses its discretion when it concludes that the conditions portrayed in the evidence represent a mere continuation of existing conditions by disregarding the evidence of changed conditions. *See Salim*, 831 F.3d at 1138; *Malty*, 381 F.3d at 946.

In this case, the country conditions evidence reveals a marked change from the conditions at the time of Singh's original hearing in 1997. The 2016 Annual Report on India by the Commission on International Religious Freedom states that "[i]n 2015, religious tolerance deteriorated and religious freedom violations increased in India." For example, "in October 2015, Sikhs protested in Chandigarh, Punjab state after pages from the Sikh Holy Scripture (Guru Granth Sahib) were found desecrated. Police officers opened fire at the unarmed protestors, killing two and injuring 70 others, and several Sikh protesters were arrested under the sedition law." Singh also submitted news articles detailing an increased focus on religious Sikhs based on the purported return of the Sikh militancy. Finally, the affidavit from Singh's mother states that the police were looking for Singh based on suspicions of his involvement in the militancy.

This new evidence stands in sharp contrast to the 1996 country conditions report that Singh submitted with his

initial applications for relief. That report showed that the situation for Sikhs in India had improved in the mid-1990s after a long period a tumult.

The clear evidence of changed conditions resembles our decisions in *Salim* and *Malty.* In *Salim*, we found that petitioner met his burden of proof when he submitted both "documentary evidence of increased persecution of Christians generally" and a "letter from his sister ... describ[ing] the rising fear experienced by his immediate family in Indonesia, and warn[ing] [the petitioner] that he and his wife and children 'should not return home.'" 831 F.3d at 1138. And in *Malty*, we remanded the BIA's denial of an untimely motion to reopen when the petitioner, a Coptic Christian, could show a qualitative change in the level of persecution in Egypt "both with respect to Coptic Christians generally and with respect to [his] family specifically." 381 F.3d at 946. Here, too, the new evidence from 2015 to 2018 shows a marked deterioration in conditions both for Sikhs generally and for Singh and his family compared to 1997.

## III. The BIA properly rejected Singh's new claim of persecution on account of membership in a particular social group of his family.

The BIA rejected Singh's new claim based on his membership in a particular social group of his family because (1) he has not shown that the group is a cognizable particular social group, and (2) he has not shown that his membership in his family would be one central reason or a reason for the harm he fears in India. While this court has held that family is the "the quintessential particular social group," *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015), the agency was correct that Singh did not establish any nexus between his family membership and the harm he fears.

To show eligibility for relief based on membership in a particular social group, an asylum applicant must show that the membership in the group was "one central reason" for his or her persecution, while an applicant for withholding of removal must show that the membership was "a reason" for the persecution. *Garcia v. Wilkinson*, 988 F.3d 1136, 1143, 1146 (9th Cir. 2021). "The phrase 'a reason' includes weaker motives than 'one central reason.'" *Barajas-Romero v. Lynch*, 846 F.3d 351, 354 (9th Cir. 2017).

Singh has not presented *any* argument that his family membership is "one central reason" or "a reason" for his alleged persecution and the persecution he fears. At most, the letter from his mother provides evidence that she was mistreated because of her kinship to him. But the BIA correctly concluded that Singh's mother's mistreatment does not show that Singh would be persecuted because of his relationship to her.

The BIA thus correctly dismissed this claim. *See Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (even if membership in a particular social group is established, an applicant must still show that "persecution was or will be *on account of* his membership in such group" (emphasis in original)).

**PETITION GRANTED; REMANDED.**