FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RANJIT SINGH,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 23-2065

Agency No.
A205-587-181

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 8, 2024[*]
Las Vegas, Nevada

Filed December 24, 2024

Before: Carlos T. Bea, Morgan B. Christen, and Mark J.
Bennett, Circuit Judges.

Opinion by Judge Bea

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Immigration

Granting Ranjit Singh's petition for review of the Board of Immigration Appeals' denial of his motion to reopen, and remanding, the panel concluded that the BIA improperly relied on the agency's prior adverse credibility determination in discrediting Singh's affidavit, which asserted new facts and claims that were dissimilar to the facts and claims he asserted in the underlying proceedings.

Singh initially claimed a fear of persecution by members of the Shiromani Akali Dal Badal party ("Badal Party") due to his political opinion in support of the Simranjit Singh Mann party ("Mann Party"). Based on inconsistencies in the record, an immigration judge accorded no evidentiary weight to Singh's written or oral testimony, and concluded that Singh's documentary evidence, standing alone, was insufficient to support his application. Singh sought to reopen his case, asserting a new fear of persecution based on the Indian government's passage of certain agricultural reform laws. This time, he claimed to be eligible for relief and protection based on his religion as a Sikh, his membership in a particular social group comprised of farmers, as well as his political opinions opposing the new agricultural laws and supporting the Mann Party. In denying Singh's motion, the BIA concluded that Singh's new affidavit and documentary evidence were immaterial due to the prior adverse credibility determination.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that the BIA improperly applied the *falsus in uno, falsus in omnibus* maxim to discount Singh's new evidence. The panel explained that the BIA must credit evidence supporting a motion to reopen unless the facts asserted in that evidence are "inherently unbelievable." This rule does not foreclose the BIA from considering evidence that has already been examined and discredited at an alien's prior removal proceedings, weighing it against new evidence submitted at the motion-to-reopen stage that must be taken as true unless inherently unbelievable, and concluding the alien is on balance ineligible for the requested relief. However, if the alien submits new evidence based on information independent of the prior adverse credibility finding, the BIA must address it.

Here, because the BIA did not find any of the new factual assertions in Singh's new statement inherently unbelievable, and instead rejected them simply because an IJ had found Singh's previous testimony on different claims for relief not credible, the panel concluded that the Board abused its discretion in denying Singh's motion to reopen. The panel remanded for further proceedings.

## COUNSEL

Ranjit Singh, Pro Se, San Rafael, California; Jaspreet Singh, Law Office of Jaspreet Singh, Richmond Hill, New York; for Petitioner.

Marie V. Robinson, Trial Attorney; Cindy S. Ferrier, Assistant Director; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BEA, Circuit Judge:

Can lips which once lied ever utter truths? In immigration cases, it depends upon who answers that question and upon what was said. In the Ninth Circuit, we recognize that immigration judges ("IJs")—but not the Board of Immigration Appeals ("BIA")—have the prerogative to answer that question by using the maxim *falsus in uno, falsus in omnibus* ("false in one thing, false in everything"). Here, however, the BIA used that prerogative to discredit petitioner Ranjit Singh's affidavit in support of his motion to reopen because Singh had been found not credible by an IJ in his prior removal proceedings, but as to facts quite unlike those he asserted in his motion to reopen. We hold that such blanket reliance on a prior adverse credibility determination that was based on dissimilar facts contravenes the law of the Ninth Circuit. We therefore grant Singh's petition for review and remand.[1]

I.

A.

Singh, a native and citizen of India born in December 1989, arrived in the United States without documentation in May 2013. He applied for admission, and the United States Customs and Border Protection ("CBP") took his sworn statement ("CBP Interview"). Singh claimed he faced and feared persecution due to his association with the Simranjit Singh Mann party ("Mann Party"), a Sikh nationalist party. According to Singh, he "used to belong to" a rival Sikh-

---

[1] We have jurisdiction under 8 U.S.C. § 1252.

centric party, the Shiromani Akali Dal Badal party ("Badal Party"), but later joined the Mann Party. For that, members of the Badal Party beat him and threatened to kill him. Singh swore that members of the Badal Party likewise beat his father, Kewal Singh, and "threaten[ed] to kill him." Yet his father was not coming to the United States because the "village court [was] going to decide what [would] happen[] to him." Singh also mentioned that it was his father who "decided for [him]"—ostensibly in 2013 when Singh was roughly 23 years old—"to come [to the United States] and get asylum."

Thereafter, the United States Citizenship and Immigration Services ("USCIS") interviewed Singh and found he had credible fear of persecution in India due to his political opinions ("Credible Fear Interview"). In the Credible Fear Interview, Singh reiterated his earlier association with the Badal Party and his later defection to the Mann Party. He described his work at the Mann Party as "put[ting] posters and campaign[s]." He claimed to have been attacked twice by members of the Badal Party because of his work for the Mann Party, respectively in December 2012 and April 2013. Singh then fled India. During the interview, Singh confirmed he did not suffer persecution on account of his race, religion, nationality, or any particular social group ("PSG").

In June 2013, the United States Department of Homeland Security ("DHS") initiated removal proceedings against Singh. In April 2014, appearing before Immigration Judge Joren Lyons ("IJ Lyons"), Singh conceded removability and sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Singh submitted his I-589 application form, in which he identified his political opinions against the Badal Party and his

membership in a PSG as the two bases for his claims, but he did not articulate the PSG. Singh also attached a statement to that I-589 form. In that statement, Singh mentioned for the first time that his father had been killed by members of the Badal Party, but he did not specify when that happened.

Singh was then scheduled to appear for a hearing in April 2015. Before the hearing, he submitted a detailed statement ("Detailed Statement"). There, Singh stated he once—he was vague about exactly when—worked for the Badal Party against the wishes of his father, a member of the Mann Party, though he also claimed in the same statement that his father died in December 1994, when Singh was only five years old. In May 2012, he left the Badal Party and joined the Mann Party. As a result, he was beaten by members of the Badal Party in December 2012 and April 2013, events for which Singh provided medical records stating he was under Dr. Gurmeet Singh's treatment "in hospital" respectively for eight and ten days. Singh also stated that during the second incident, members of the Badal Party told him it was them who had killed Singh's father in 1994 because he had worked for the Mann Party. According to Singh, they threatened to kill him the same way they killed his father. Singh also produced a death certificate issued in 2010 that showed a person named Kewal Singh had died in December 1994.

In April 2015, Singh appeared before IJ Lyons in San Francisco, California. At the outset of the hearing, since Singh checked both the "political opinion" and "membership in a particular social group" boxes in his I-589 form, IJ Lyons asked Singh's counsel to identify a PSG. Singh's counsel could not articulate one other than the Mann Party. Accordingly, IJ Lyons concluded Singh's claim was "essentially a political opinion claim."

Moving onto the merits, Singh testified in the April 2015 hearing that he had never been a member of any political party other than the Mann Party, which contradicted his previous statements that he defected to the Mann Party from the Badal Party.  Upon cross-examination, Singh explained he only "s[at] with Badal Party members in their functions," "rubb[ed] shoulders" with them, and attended their meetings.  Singh testified these activities continued "over a long period of time" after his first interaction with the Badal Party sometime in 2012.  This testimony conflicted with his prior statement that he joined the Mann Party—not the Badal Party—in May 2012.

Singh further testified he was physically assaulted by members of the Badal Party in December 2012 and April 2013.  After both incidents, a doctor treated Singh's injuries at his home.  This testimony was at odds with Singh's medical records, which showed he was "in hospital" for over a week after both incidents.

Later in the hearing, counsel for the Department of Justice confronted Singh with the transcript of his CBP Interview and asked why it suggested his father was still alive at the time of the CBP Interview.  Singh equivocated.  Singh's counsel requested a continuance for the hearing, which was granted.

In August 2015, about four months later, Singh came back before IJ Lyons.  He clarified his father indeed died in December 1994 and, in the CBP Interview, he was referring to his paternal grandfather, Boota Singh, who was alive.  Upon cross-examination, Singh testified that "every time" he mentioned his father in the CBP Interview, he meant his grandfather.  That testimony made some of Singh's earlier answers in the CBP Interview preposterous, such as when he

said "[m]y father's name is Kewal Singh," which was his father's name, not his grandfather's name.

In December 2015, IJ Lyons denied Singh's application for asylum, withholding of removal, and CAT protection, and ordered him removed to India.

IJ Lyons found Singh's testimony not credible. In particular, IJ Lyons focused on three areas of inconsistency in Singh's testimony. First, Singh testified he never received medical treatment other than at his own home after either the 2012 or the 2013 beating incidents, but the hospital certificates showed he was hospitalized for over a week after each of these attacks. Second, IJ Lyons found irreconcilable Singh's testimony at different stages regarding his father's death. Was Singh's father in fact dead, and was he in fact killed by members of the Badal Party due to his work for the Mann Party? Third, Singh provided an inconsistent timeline as to when he left the Badal Party and joined the Mann Party, and it was unclear whether Singh was only peripherally involved in the Badal Party or he had a more active role.

Given these inconsistencies, IJ Lyons accorded "no evidentiary weight" to Singh's "written or oral testimony." While IJ Lyons did not similarly dismiss Singh's documentary evidence, he concluded that it, standing alone, was insufficient to support Singh's application. For example, Singh produced affidavits from his mother, grandfather, village leader, and a Mann party representative. IJ Lyons accorded these affidavits "very limited" weight because their authors were "not presented for cross-examination" and "did not personally witness the alleged beatings that form[ed] the crux of [Singh's] persecution claim."

Singh appealed to the BIA.  The BIA adopted and affirmed IJ Lyons's decision on December 7, 2016.  Singh then petitioned for review by the Ninth Circuit, which concluded IJ Lyons's adverse credibility finding was supported by substantial evidence and thus denied Singh's petition for review.  *Singh v. Garland*, 847 F. App'x 475, 476 (9th Cir. 2021).

## B.

In July 2021, more than four years after the 2016 BIA decision,[2] Singh moved before the BIA to reopen his case, arguing that a new fear of persecution had arisen as India had passed certain agricultural reform laws in 2020 ("Farmers' Laws").[3]  This time, he claimed to be eligible for asylum, withholding of removal, and CAT protection based on his religion as a Sikh, his membership in a PSG of farmers, as well as his political opinions opposing the Farmers' Laws and supporting the Mann Party.

To support his motion to reopen, Singh produced five sets of evidence.  *First*, Singh submitted a new sworn statement ("July 2021 Sworn Statement").  In it, he stated that his family belonged to the farmer class in India, that his

---

[2] Singh appears to have remained in the United States during these years. It is unclear from the record how he managed to do so.

[3] It does not appear these Farmers' Laws are still in effect.  *See Tiwana v. Garland*, No. 23-376, 2024 WL 705710, at *1 (9th Cir. Feb. 21, 2024) (unpublished) ("The Indian government rescinded the protested laws and began negotiations with the farmers.  As a result, the farmers declared 'a complete victory' and ended their protests.  Petitioner does not address this change or explain why he would still suffer persecution now that the farmer protests are no longer ongoing in India.").  The BIA did not deny Singh's motion to reopen on this ground, so it is outside the scope of our review.  *Rubalcaba v. Garland*, 998 F.3d 1031, 1036 n.4 (9th Cir. 2021).

grandfather protested the Farmers' Laws, and that as a result, his family was assaulted and threatened by the police and members of the Bharatiya Janata Party ("BJP Party"), a Hindu party that has governed India since 2014. According to Singh, the police threatened his family in March 2021, saying that they knew Singh was "supporting the farmers' protests and the [Mann] [P]arty while living out of India," and that, as a result of his said support, "he w[ould] be implicated in a false case of sedition and also under the [P]revention of [T]errorist [A]ctivities Act." Singh also mentioned he would "suffer problems in India due to [his] religion" as a Sikh.

*Second*, Singh submitted a medical record, which showed a patient named Boota Singh—purportedly Singh's grandfather—was admitted to a hospital in September 2020, with a diagnosis of coronary artery disease, congestive cardiac failure, and a fractured right femur. *Third*, Singh proffered photos of unidentified people that purportedly portray the protests in which Singh's grandfather participated. *Fourth*, Singh produced certain land ownership papers in the name of Singh's grandfather. *Finally*, Singh attached news articles and reports about the BJP Party's persecutions against protesters of Farmers' Laws, supporters of the Mann Party, and Sikhs in general.

On August 11, 2023, the BIA denied Singh's motion to reopen as untimely, because the alleged changes of country conditions in India were immaterial to Singh's individual eligibility for asylum and other requested relief.

This conclusion of immateriality was derived from the BIA's dismissal of both categories of evidence produced by Singh: his July 2021 Sworn Statement and documentary evidence. In the BIA's view, Singh's documentary evidence

established, at most, generalized information about India's country conditions, but it was not sufficiently tied to Singh himself to be material. As for Singh's July 2021 Sworn Statement, the BIA found Singh "has not provided any evidence seeking to rehabilitate his lack of credibility as a witness" and thus held that Singh's "bald allegations" were "insufficient to establish the truth of the allegations set forth therein, in light of the undisturbed prior adverse credibility finding" made by IJ Lyons. The BIA faulted Singh for failing to corroborate his July 2021 Sworn Statement with affidavits from other witnesses. Without such corroboration, the BIA saw no evidence capable of establishing that Singh himself, who had been "held not to be a credible witness," faced "an individualized risk of persecution or torture upon return to India."

Singh timely petitioned for our review.

## II.

"An alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." *Mata v. Lynch*, 576 U.S. 143, 144 (2015) (citing 8 U.S.C. § 1229a(c)(7)(A)). A motion to reopen must be filed within 90 days from the entry of a final administrative order of removal unless, among other exceptions, it is based on changed conditions in the alien's country of nationality or country of removal. 8 U.S.C. § 1229a(c)(7)(C)(i)–(ii).

Where, as here, the motion to reopen is based on changed country conditions, the movant must (a) produce evidence of changed country conditions, (b) establish that the evidence is "material" and "was not available and would not have been discovered or presented at [] previous hearings," and (c) demonstrate his prima facie eligibility for the relief sought. *Sarkar v. Garland*, 39 F.4th 611, 621 (9th Cir. 2022)

(citation omitted).  As relevant here, an alleged change of country conditions lacks materiality if the movant "simply recounts generalized conditions" and fails to establish "individualized relevancy." *Id.* at 622 (citations omitted).

We review the BIA's denial of a motion to reopen for abuse of discretion. *Id.* at 621.  We must deny Singh's petition for review unless the BIA's decision was "arbitrary, irrational, or contrary to law." *Id.* (citation omitted).

### III.

Filing his motion to reopen more than four years after the BIA's 2016 decision, Singh does not dispute his motion was untimely.  He instead challenges the BIA's conclusion of immateriality and argues the BIA abused its discretion by discrediting the entirety of his July 2021 Sworn Statement solely based on IJ Lyons's 2015 adverse credibility finding. We agree.

### A.

In the BIA's view, Singh could not be credible this time because he was found not credible last time.  This view reflects the maxim *falsus in uno, falsus in omnibus*—false in one thing, false in everything.

This, however, is not the law of the Ninth Circuit.  True, we have granted IJs the power to invoke the *falsus* maxim, which allows IJs to discredit an alien's "entire testimony" in removal proceedings if the alien "makes a *material* and *conscious* falsehood in one aspect of his testimony." *Li v. Holder*, 738 F.3d 1160, 1163 (9th Cir. 2013) (emphases in original).  But that power belongs to IJs, not the BIA.

We have held that the BIA, unlike an IJ, sits as an appellate body and does not have the *falsus* maxim at its

disposal. *Yang v. Lynch*, 822 F.3d 504, 507 (9th Cir. 2016). In *Yang v. Lynch*, Yang initially applied for asylum and other relief because he protested a government-affiliated hotel where he worked in China. *Id.* After that application was denied, Yang filed a timely motion to reopen based on new factual assertions. *Id.* Specifically, he submitted an affidavit that detailed his conversion to Christianity and alleged that Chinese authorities threatened to send his wife in China to a forced-labor camp after he tried to mail her religious literature. *Id.* Like the BIA in this case, the BIA there denied Yang's motion to reopen, discrediting his affidavit on religious conversion solely because his prior testimony regarding the hotel protest had been found not credible. *Id.* The Ninth Circuit granted Yang's petition for review and remanded, holding that the BIA may not apply the *falsus* maxim to deny a motion to reopen.[4] *Id.* at 509.

Accordingly, the Ninth Circuit has long held the BIA must credit evidence supporting a motion to reopen unless the facts asserted in that evidence are "inherently unbelievable." *Id.* at 508 (citations omitted); *see also Reyes v. INS*, 673 F.2d 1087, 1090 (9th Cir. 1982) ("Since motions to reopen are decided without benefit of a hearing, common notions of fair play and substantial justice generally require that the [BIA] accept as true the facts stated in an alien's affidavits in ruling on his or her motion [to reopen]."). This rule, of course, does not foreclose the BIA from considering evidence that has already been examined and discredited at an alien's prior removal proceedings, weighing it against

---

[4] When the BIA dismisses an appeal from an IJ's adverse credibility determination, "it does not make its own credibility determination" because "[i]t merely concludes that the witness *might* not have been credible, i.e., that there was enough evidence to support the immigration judge's finding." *Yang*, 822 F.3d at 508 (emphasis in original).

new evidence submitted at the motion-to-reopen stage that must be taken as true unless inherently unbelievable, and concluding the alien is on balance ineligible for the requested relief. *Limsico v. INS*, 951 F.2d 210, 213–14 (9th Cir. 1991).

## B.

Against this backdrop enters *Greenwood v. Garland*. 36 F.4th 1232 (9th Cir. 2022). The Ninth Circuit in *Greenwood* held that the BIA "may rely on a previous adverse credibility determination to deny a motion to reopen." *Id.* at 1234. The question then arises as to whether *Greenwood* opened the door for the BIA to use the *falsus* maxim in deciding motions to reopen.[5] Can the BIA now deny a motion to reopen by discrediting an alien's affidavit whenever the alien was found in the past dishonest as to any material facts? The answer is no.

In *Greenwood*, the Ninth Circuit held the BIA did not abuse its discretion in denying Greenwood's motion to reopen because an IJ previously determined "Greenwood's testimony about his identity was not credible" based on findings that he used "multiple fake names" and a "fraudulent passport." *Id.* at 1234, 1236. Specifically, Greenwood produced two pieces of evidence to prove his identity before the IJ: his testimony and "a birth registration form in the name of Garfield Greenwood." *See* Certified Administrative Record at 242–43, *Greenwood v. Garland*, 36 F.4th 1232 (9th Cir. 2022) (No. 17-72389). The IJ first questioned the authenticity of the birth registration form and its value in establishing Greenwood's identity. *Id.* at 249–

---

[5] *Greenwood* did not cite *Yang*, 822 F.3d 504, or discuss the *falsus* maxim. *See generally* 36 F.4th 1232.

50.  Then, the IJ found Greenwood's testimony about his own identity not credible and, on that basis, dismissed his overall testimony about fear of persecution and torture.  *Id.* at 252–53.  The IJ thus denied relief.  *Id.* at 253.

Several years later, Greenwood filed a motion to reopen based on changed country conditions in his native Jamaica.  *Id.* at 9.  In support of this motion, Greenwood submitted a new I-589 application form, a new declaration, and a couple of country reports.  *Id.* at 24–75.  As he did not produce any new evidence to corroborate his claimed identity, the BIA denied his motion to reopen, and the Ninth Circuit denied his petition for review.  *Greenwood*, 36 F.4th at 1235, 1237.  If Greenwood could not prove who he was, the Ninth Circuit reasoned, no evidence about what could happen to *him* upon return to Jamaica could be material to *his* eligibility for the requested relief.  *Id.* at 1236–37.

Never did the Ninth Circuit in *Greenwood* say an alien who was once found untrustworthy as to certain facts should remain not credible forever as to any other facts.  The Ninth Circuit focused not on Greenwood's *character* as a witness, but on the misty *fact* of his identity.  Because the IJ in *Greenwood* had already found Greenwood's claimed identity to be specious, it would have "def[ied] common sense" to require the BIA to accept that specious identity as true without seeing any new corroborating evidence at the motion-to-reopen stage.  *Id.* at 1237.  Accordingly, *Greenwood* stood for a common-sense proposition that an earlier unproven fact—not an unreliable witness—remains unproven in a later proceeding, unless effectively corroborated by new evidence.[6]  *Id.* at 1236–37; *see also id.*

---

[6] Understood as such, *Greenwood* was a reasonable extension to *Limsico*.  *Compare Limsico*, 951 F.2d at 213–14, *with Greenwood*, 36

at 1234 (holding that the BIA "may rely on a previous adverse credibility determination to deny a motion to reopen if that earlier finding *still factually undermines* the petitioner's new argument" (emphasis added)).

*Rupinder Singh v. Garland* confirmed this reading of *Greenwood*.[7]  46 F.4th 1117 (9th Cir. 2022).  In that case, Rupinder applied for asylum, claiming he was persecuted by the Indian government on account of his Sikh religion and because he supported the Mann Party and the creation of a Sikh Khalistan as an independent nation.  *Id.* at 1120.  An IJ denied Rupinder's application based on an adverse credibility determination, finding his testimony lacked detail and consistency.  *Id.*  Fourteen years later, Rupinder filed a motion to reopen based on an alleged change of how India treated Sikhs, but the basis of his claims remained largely the same.  *Id.*  To support his motion to reopen, Rupinder produced, *inter alia*, "a letter from the Mann [Party] leader attesting to his membership in the party" and "a letter from his mother stating that the police were looking for" Rupinder.  *Id.* at 1122.  The BIA took notice of Rupinder's new evidence but quickly cast it aside, reasoning that the prior adverse credibility finding obviated the need to consider the new evidence.  Certified Administrative Record

---

F.4th at 1234, 1236–37.  In *Limsico*, we focused on whether a piece of *evidence* (e.g., an affidavit) was examined and discredited in an alien's prior removal proceedings; if yes, then the BIA need not interpret that same evidence in the alien's favor.  In *Greenwood*, we extended this evidentiary logic to *facts*: If an item of fact was found unproven in a prior removal proceeding, we do not require the BIA to accept it suddenly as proven simply because the alien repeats it in support of his motion to reopen.

[7] *Rupinder Singh* did not cite *Yang*, 822 F.3d 504, or discuss the *falsus* maxim.  *See generally* 46 F.4th 1117.

at 4, *Rupinder Singh v. Garland*, 46 F.4th 1117 (9th Cir. 2022) (No. 19-73107).  The BIA thus denied his motion to reopen.

Granting Rupinder's petition for review and remanding, the Ninth Circuit clarified that *Greenwood* did not license the BIA to "deny a motion to reopen just because that motion touches upon the same claim or subject matter as the previous adverse credibility finding."  46 F.4th at 1120.  We held Rupinder's newly submitted evidence was "based on information independent of the prior adverse credibility finding" and, therefore, was not foreclosed by that prior finding.  *Id.* at 1122 (citation omitted).

In so holding, the Ninth Circuit expounded that "to prevail on a motion to reopen alleging changed country conditions where the persecution claim was previously denied based on an adverse credibility finding in the underlying proceedings," an alien "must either overcome the prior determination or show that the new claim is independent of the evidence that was found to be not credible."  *Id.* (citation omitted).  If the alien submits new evidence "based on information independent of the prior adverse credibility finding, it must be addressed."  *Id.* (citation omitted).  Such new evidence, of course, includes the alien's new affidavit in support of his motion to reopen.[8]

---

[8] Rupinder also submitted an affidavit in support of his motion to reopen, but the Ninth Circuit focused on his other evidence in *Rupinder Singh*. *See generally* 46 F.4th 1117.  That, however, was not a tacit endorsement for discrediting Rupinder's affidavit simply based on his prior adverse credibility finding.  Rather, the Ninth Circuit did not rest its decision on Rupinder's affidavit because it was by and large an index and summary of his other newly submitted evidence, which supplied a sufficient ground for granting Rupinder's petition for review.  *See generally* Certified Administrative Record at 25–27, *Rupinder Singh v. Garland*,

In other words, if the alien's newly submitted affidavit asserts facts independent of what was previously found unproven by an IJ, then the BIA must address those facts anew.[9]

C.

To synthesize our precedents, an item of evidence already found not credible at an alien's removal proceedings remains presumptively not credible at the motion-to-reopen stage, unless that item of evidence is effectively rehabilitated by adequate proffer of proof. Likewise, an item of fact unproven at the alien's removal proceedings remains unproven—and the BIA is free to disregard it—unless the alien effectively corroborates it with new evidence submitted in support of his motion to reopen.

When faced with a motion to reopen filed by an alien who was tarnished by an adverse credibility finding from previous removal proceedings, the BIA should first ascertain

---

46 F.4th 1117 (9th Cir. 2022) (No. 19-73107). For example, Rupinder himself did not affie his mother was persecuted; he attested only to the fact that he received a signed affidavit from his mother, who informed him of an instance of persecution, for the recounting of which he basically relayed what his mother affied. *Id.* at 26–27; *see also id.* at 124–25.

[9] Admittedly, the Ninth Circuit also mentioned in *Rupinder Singh* that if newly submitted evidence "is contingent, in part or in whole, on factors that were determined to lack credibility and have not been rehabilitated," the alien's "ability to successfully establish prima facie eligibility may be undermined." *Rupinder Singh*, 46 F.4th at 1122 (quoting *Matter of F-S-N-*, 28 I. & N. Dec. 1, 4 (B.I.A. 2020)). We understand the word "factors" in this quote refers to facts and does not include an alien's general credibility as a witness; otherwise, the BIA would be applying the *falsus* maxim, contrary to *Yang*.

the scope of that adverse credibility finding.[10]  Then, the BIA should discern what facts were tainted by the alien's discredited testimony and were not established by other evidence.  If those facts are again solely evidenced by the alien's affidavit at the motion-to-reopen stage, then the BIA is free to discredit them, not through the application of the *falsus* maxim, but because it "would defy common sense" to require the BIA to accept previously rejected facts when proffered anew based solely on the discredited words of the same witness.  *Greenwood*, 36 F.4th at 1237.

This much, and nothing more, is what the BIA can rely on from an alien's prior adverse credibility finding when deciding the alien's motion to reopen, without affronting *Yang*.  If a factual allegation was not presented at all in the alien's removal proceedings, the BIA must accept it as true unless it is inherently unbelievable.  The BIA cannot disregard the alien's new factual allegations simply because the alien was previously found not credible as to other different factual allegations.

## IV.

In this case, Singh initially sought asylum, withholding of removal, and CAT protection based on his membership with the Mann Party and his political opinions against the Badal Party.  In support of those claims, Singh testified he worked for the Mann Party and suffered violence as a result.  Based on inconsistencies in certain material aspects of Singh's testimony, IJ Lyons found his entire testimony not credible.

---

[10] An IJ "is free to credit part of a witness' testimony without necessarily accepting it all."  *Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (cleaned up) (citation omitted).

Now in his motion to reopen, Singh renewed his claims for relief based on a different set of protected grounds: his religion as a Sikh, his membership in a PSG of farmers, as well as his political opinions for the Mann Party and against the Farmers' Laws. His old and new claims overlap only in that Singh has remained a supporter of the Mann Party. Everything else is new, including that his alleged persecutor is no longer the Sikh-centric Badal Party, but the Hindu-based BJP Party.

Singh no longer relies on the 2012 and 2013 incidents, when he was purportedly beaten by members of the Badal Party because of his defection to the Mann Party, or his father's death, which was allegedly caused by members of the Badal Party due to his father's work with the Mann Party. Instead, Singh now asserts his grandfather was attacked by the police and the BJP Party after protesting the Farmers' Laws. This factual allegation was not presented in Singh's 2015 removal proceedings, so the BIA must accept it as true for purposes of ruling on his motion to reopen, unless it is inherently unbelievable. The same can be said of Singh's statements that the police and the Hindu BJP Party—not the Sikh Badal Party—threatened him and his family because they belonged to a PSG of farmers, supported farmers' protests, and are Sikhs.

Granted, Singh's motion to reopen reiterates his claim that he is a proponent of the Mann Party. In deciding Singh's motion to reopen, however, the BIA cannot discredit this factual assertion solely based on IJ Lyons's prior adverse credibility finding as to Singh's testimony because Singh's membership with the Mann Party was independently supported by a Mann party representative's affidavit at Singh's removal proceedings. While IJ Lyons afforded "very limited weight" to that affidavit, he did not discredit it

outright. Accordingly, the fact of Singh's membership in the Mann Party was, at the very least, not inherently unbelievable.

To conclude, the BIA in this case did not find any of the new factual assertions in Singh's July 2021 Sworn Statement inherently unbelievable. Instead, the BIA rejected them simply because IJ Lyons had found Singh's previous testimony on different claims for relief not credible. This amounted to abuse of discretion, as the BIA misused the *falsus* maxim in violation of *Yang*. We therefore grant Singh's petition for review and remand.

## V.

In *Yang*, we declined to add the *falsus* maxim to the BIA's quiver for deciding motions to reopen, lest it spawn fresh credibility determinations by the BIA that are untethered from an IJ's initial credibility findings. 822 F.3d at 507. We continue to do so here.[11]

**PETITION GRANTED; REMANDED.**

---

[11] We express no view on Singh's prima facie eligibility for the reliefs requested in his motion to reopen.